MICHAEL GRIFFIN, Plaintiff-Appellant v. MICHAEL HOLDEN, Defendant-Appellee

No. COA05-1608

(Filed 7 November 2006)

**1. Libel and Slander— chair of county commissioners—statements about financial transfer—action by county finance manager**

Summary judgment was correctly granted for a county commission chairman against whom the deputy manager and finance officer of the county brought a libel action. None of the statements constituted libel per se because they were capable of more than one meaning and they were not of a nature from which disgrace, public ridicule, or shunning could be presumed as a matter of law. Plaintiff did not show libel per quod in that he was not able to produce an evidentiary forecast of actual malice or special damages.

**2. Employer and Employee— intentional interference with contract—statements and action by chairman of commissioners—finance manager terminated**

Summary judgment was correctly granted for the defendant on a claim for intentional interference with an employment contract where the chairman of a county board of commissioners initiated an investigation into a financial transfer and made comments to the press, and the county manager eventually terminated plaintiff, the deputy manager and finance officer of the county.

Appeal by plaintiff from judgment entered 6 June 2005 by Judge John R. Jolly, Jr. in Moore County Superior Court. Heard in the Court of Appeals 16 August 2006.

> *Van Camp, Meachem & Newman, PLLC, by Thomas M. Van Camp, for plaintiff-appellant.*
>
> *Garris Neil Yarborough, for defendant-appellee.*

ELMORE, Judge.

Michael Griffin (plaintiff) brought an action against Michael Holden (defendant) for libel *per se*, libel *per quod*, and intentional interference with contract. Defendant filed a motion for summary judgment, which the trial court granted. Plaintiff appeals. After careful review of the record, we affirm the trial court's ruling.

Beginning in July 1994, plaintiff was employed as Deputy County Manager/Finance Officer of Moore County. In that same year, the Moore Parks Foundation (the Foundation) was created to raise money for the construction of Hillcrest Park. The Foundation was not a department or agent of the county, but the funds donated to the Foundation were transferred to the county and held in the Hillcrest Park Capital Project Fund (the fund). Beginning in 1998, the county began to match the donations collected by the Foundation and, between 1998 and 2000, contributed $190,000.00 to the fund.

Hillcrest Park was substantially complete by 2001, with $63,000.00 still remaining in the fund. In July 2002, representatives of the Foundation discussed with plaintiff the return of $43,617.00 of the unspent donations. The Foundation based this amount on a *pro rata* calculation of the Foundation's contribution to the fund (roughly 70%). According to Foundation representatives, the remaining balance, roughly $19,000.00, belonged to the county. Plaintiff conferred with County Manager David McNeil about the transaction, and then, in his capacity as Finance Officer of Moore County, plaintiff authorized $43,617.00 to be returned to the Foundation.

County Manager McNeil resigned in November 2002. From December 2002 to May 2003, plaintiff served as Interim County Manager of Moore County. In May 2003, Steven Wyatt (Wyatt) was named permanent County Manager of Moore County, and plaintiff resumed his duties as Deputy County Manager/Finance Officer.

In March 2004, defendant, the Chairman of the County Board of Commissioners, asked Wyatt to look into paving the entranceway to Hillcrest Park. Defendant warned Wyatt that "somebody told [him] that some money got moved around." Wyatt asked plaintiff about the funds, and plaintiff sent Wyatt an email message detailing the available funds and the transfer to the Foundation. Plaintiff told Wyatt in the email that "some of the [fund] money had been given back to the parks foundation." When Wyatt asked specifically about the process, plaintiff informed him that a budget amendment had been approved by the Board. Wyatt asked plaintiff for a copy of the budget amendment, but did not hear back from plaintiff for "a couple of weeks, maybe 10 days, 14 days." Wyatt then asked Carol Thomas, the clerk, to get him a copy of the budget amendment. Thomas returned and said that she could not find the amendment. Wyatt asked John Frye about the budget amendment, and Frye sent an email saying that "staff had done [the transfer of money to the Foundation]." Wyatt believed that plaintiff had lied to him about the budget amendment. Wyatt contacted David Lawrence at the University of North Carolina Chapel Hill School of Government for advice. After hearing Wyatt's account of the transfer, Wyatt stated that Lawrence said "that was an unauthorized transaction."

At this point, Wyatt directed the county attorney to retain an outside firm to conduct an "arm's length" examination of the $43,000.00 transaction. "[T]he county attorney's office entered into an agreement with Dixon Hughes to audit this particular transaction." According to then County Attorney Lesley Moxley, "it was to be an independent audit."

On 5 May 2004, the auditors presented their findings to the Board of Commissioners in closed session. The auditors reported to the Board that all of the remaining $63,000.00 of the fund had belonged to Moore County, meaning that plaintiff was required to obtain Board approval before transferring funds to any third party, including the Foundation. Plaintiff had not obtained Board approval before making the transfer.

The Board of Commissioners decided to release the consulting report to the public. Immediately after the closed session, defendant, as chairman, was asked several questions by the media. Some of his responses were later published in local newspapers.

On 19 May 2004, Wyatt gave plaintiff the opportunity to submit his resignation. Plaintiff elected not to resign. On 20 May 2004, an article

appeared in *The Fayetteville Observer*, publishing the results of the consulting report released by the Board and containing a series of statements made by defendant regarding the money transferred to the Foundation. On 21 May 2004, another article appeared in *The Pilot*, containing an additional statement made by defendant regarding the transfer. The relevant statements are as follows:

**_Fayetteville Observer_, 20 May 2004:**

(a) "Today we are making sure that procedures and policies are in place to make sure that the money that belongs to taxpayers of Moore County are properly in place."

(b) "If you do something like this, you do it for a good reason. And there doesn't seem to be a good reason."

(c) "It was Moore County money and they took it and gave it to someone outside the control of Moore County."

(d) "The Board authorized its lawyer, Lesley Moxley, to deliver the audit report to the District Attorney's Office."

(e) "It appears to me that this is the kind of mischief that we were trying to stop the lame-duck Board of Commissioners from carrying out."

(f) "My belief here, today, is there are some County employees that were doing things and moving money around for various and sundry motives."

**_The Pilot_, 21 May 2004:**

(g) "We told you so, I said at the time that they would leave scorched earth behind them going out the door."

On 28 May 2004, Wyatt issued a letter to plaintiff terminating his employment for "grossly inefficient job performance" and "unacceptable personal conduct."

On 1 July 2004, plaintiff filed a complaint against defendant for libel *per se* and libel *per quod*, alleging both special and punitive damages. Plaintiff also filed an action against defendant for intentional interference with contract, alleging that defendant orchestrated plaintiff's termination by arranging for an unfavorable audit/consulting report to be presented to the Board of Commissioners. On 25 April 2005, defendant filed a motion for summary judgment on all

GRIFFIN v. HOLDEN

[180 N.C. App. 129 (2006)]

claims. The trial court granted defendant's motion for summary judgment. Plaintiff now appeals, contending that the trial court erred by granting defendant's motion for summary judgment, on the grounds that there existed genuine issues of material fact regarding all of his claims. Plaintiff's arguments are without merit, and we affirm the trial court's grant of summary judgment.

[1] Summary judgment is appropriate when all the evidentiary materials before the court "show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "The moving party has the burden of establishing the absence of any genuine issue of material fact, and the evidence presented should be viewed in the light most favorable to the nonmoving party." *Parish v. Hill*, 350 N.C. 231, 236, 513 S.E.2d 547, 550 (1999) (citing *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 355-56, 348 S.E.2d 772, 774 (1986); *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985)). "The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . ." *Bolick v. Bon Worth, Inc.*, 150 N.C. App. 428, 429, 562 S.E.2d 602, 603 (2002) (quoting *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)). Once defendant meets this burden, plaintiff must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie [sic] case at trial." *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (quoting *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)).

Generally, to make out a *prima facie* case for defamation, "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 356, 595 S.E.2d 778, 783 (2004) (quoting *Tyson v. L'Eggs Prods., Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)). Libel is generally divided into three classes:

(1) publications obviously defamatory which are called libel *per se*; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, collo-

quium, and explanatory circumstances become libelous, which are termed libels *per quod.*

*Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 316, 312 S.E.2d 405, 408 (1984) (quoting *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979)). Plaintiff brings two actions for libel: libel *per se* and libel *per quod.*

As an initial matter, we must determine "[w]hether a publication is one of the type that properly may be deemed libelous *per se.*" *Ellis v. Northern Star Co.*, 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990). "In determining whether [a statement] is libelous *per se* the [statement] alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The [statement] must be defamatory on its face 'within the four corners thereof.' " *Renwick*, 310 N.C. at 318, 312 S.E.2d at 409 (1984) (quoting *Flake v. Greensboro News Co.*, 212 N.C. 780, 787, 195 S.E. 55, 60 (1938)). To be libelous *per se*, defamatory words must generally "be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 26, 588 S.E.2d 20, 26 (2003) (quoting *Flake*, 212 N.C. at 786, 195 S.E. at 60). If the statement is subject to two interpretations, one of which is not defamatory, then it is not libelous *per se. Renwick*, 310 N.C. at 318, 312 S.E.2d at 409 (defendant's editorial was susceptible to a non-defamatory interpretation as well as a defamatory interpretation, so there was no cause of action for libel *per se*). The determination of whether statements are libelous *per se* has a significant bearing on plaintiff's evidentiary burden.

"When a publication is libelous *per se*, a prima facie [sic] presumption of malice and a conclusive presumption of legal injury arise entitling the victim to recover at least nominal damages without proof of special damages." *Hanton v. Gilbert*, 126 N.C. App. 561, 567, 486 S.E.2d 432, 436-37 (1997) (quoting *Arnold*, 296 N.C. at 537-38, 251 S.E.2d at 455). On the other hand, when a publication is libelous *per quod*, the injurious character of the words and some special damage must be pleaded and proved. *Renwick*, 310 N.C. at 316, 312 S.E.2d at 408; *Flake*, 212 N.C. at 785, 195 S.E.2d at 59.

In this case, none of defendant's publications were libelous *per se*. Although some of the statements are potentially defamatory in that they imply some level of impropriety in the transfer of funds to

the Foundation, none of the statements at issue are "of such nature that the court can presume *as a matter of law* that they tend to disgrace and degrade [plaintiff] or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Broughton*, 161 N.C. App. at 26, 588 S.E.2d at 26 (emphasis added). Further, all of the statements are ambiguous enough to be capable of more than one meaning, some of which are not defamatory. Plaintiff's first assignment of error is therefore overruled; we confine our subsequent analysis to plaintiff's claim of libel *per quod*. As a result, plaintiff must include a showing of malice and special damages in his evidentiary forecast. *See id.*

Where the plaintiff in a libel action is a public official, the court imposes a more strenuous constitutional standard of malice in addition to state common law elements. This Court has acknowledged the United States Supreme Court's decision that:

Where the plaintiff is a "public official" and the allegedly defamatory statement concerns his official conduct, he must prove that the statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

*Varner v. Bryan*, 113 N.C. App. 697, 703, 440 S.E.2d 295, 299 (1994) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706 (1964)). Likewise, this Court has noted the United States Supreme Court's definition of "public official": "[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Cline v. Brown*, 24 N.C. App. 209, 214, 210 S.E.2d 446, 449 (1974), *cert. denied* 286 N.C. 412, 211 S.E.2d 793 (1975) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 606 (1966)).

At all times relevant to this suit, plaintiff had "substantial responsibility for . . . the conduct of governmental affairs." *Id.* The statements at issue were made about plaintiff's conduct as Finance Officer of Moore County and so related to plaintiff's official conduct; plaintiff therefore brings this libel action as a public official. Accordingly, plaintiff must show that defendant published the alleged libels with actual malice, in addition to showing all state common law elements.

GRIFFIN v. HOLDEN

[180 N.C. App. 129 (2006)]

If defendant shows through discovery that plaintiff "cannot produce evidence to support an essential element of [these] claim[s]," per *Bolick*, 150 N.C. App. at 429, 562 S.E.2d at 603, then the burden shifts to plaintiff to "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie [sic] case at trial." *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427. The elements of plaintiff's *prima facie* case for libel *per quod*, which he brings in his capacity as a public official, include the following: (1) defendant published false statements, (2) the statements were defamatory, (3) the statements were of or concerning the plaintiff, (4) the statements were published to a third person, (5) the publication caused special damage to plaintiff, and (6) defendant did so with actual malice as defined in *Sullivan*, that is, "with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not." *See Sullivan*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706; *Renwick*, 310 N.C. at 316, 312 S.E.2d at 408; *Tyson*, 84 N.C. App. at 10-11, 351 S.E.2d at 840. Because plaintiff failed to satisfy the final two elements of actual malice and the existence of special damages, we affirm the trial court's grant of summary judgment.

We begin our analysis with the issue of actual malice. As stated above, the burden is on defendant to show that there are no triable issues of fact. "[Defendant] may meet this burden by . . . showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . ." *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342. Here, defendant raised significant doubt as to the evidence supporting his actual malice in making the publications at issue. Indeed, there is no definitive evidence in the record that tends to show, independent of speculation and inference, that defendant published any of the statements with actual malice. Accordingly, the burden outlined in *Roumillat* has been met, and plaintiff must therefore "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie [sic] case at trial." *Id.*

In order to establish that defendant published the statements at issue with actual malice, plaintiff must show that defendant published them "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Sullivan*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706. Further, the United States Supreme Court has stated that:

[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated

**GRIFFIN v. HOLDEN**

[180 N.C. App. 129 (2006)]

before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson*, 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267 (1968). In addition, plaintiff must produce enough evidence to make a *prima facie* showing of actual malice with convincing clarity:

When a defamation action brought by a "public official" is at the summary judgment stage, the appropriate question for the trial judge is whether the evidence presented is sufficient to allow a jury to find that actual malice had been shown with convincing clarity.

*Varner*, 113 N.C. App. at 704, 440 S.E.2d at 299 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 91 L. Ed. 2d 202, 217 (1986)). We must therefore determine whether plaintiff produces an evidentiary forecast sufficient to show actual malice with convincing clarity.

It should be noted that throughout the section of his brief titled "Evidence of Holden's Bad Motive, Malice and Reckless Disregard for the Truth" plaintiff relies on conclusory statements and seems to allege malice on the part of everyone from the county attorney's office to the accounting firm that handled the independent investigation. This is not a wrongful termination case. The actions and intentions of those other than defendant are, at best, ancillary to the question of whether defendant made the statements with malice. We will therefore address only those contentions that bear on the presence or absence of malice in defendant's statements.

Plaintiff first alleges that defendant's statements that plaintiff was moving money around for various and sundry motives and that plaintiff was engaged in mischief constituted recklessness. However, plaintiff's bald assertion that defendant's statements were made without any factual basis fails to forecast evidence to that effect. Likewise, plaintiff points to defendant's personal hostility and "well-known dislike" for him and attempts to provide what is, at best, anecdotal evidence thereof. Even were he able to provide a more convincing forecast of evidence, however, personal hostility is not evidence of actual malice in the context of *New York v. Sullivan. See Varner*, 113 N.C. App. at 704, 440 S.E.2d at 300.

Plaintiff's claim that defendant waited to take action for a full year following the transfer of the county money in order to take advantage of a change in county policy that allowed plaintiff to be fired is also insufficient. Yet again, plaintiff's complaint, absent any forecast of evidence to support it, remains merely an allegation. The same can be said of plaintiff's argument that defendant "knew" that the independent report was "flawed in many respects." Plaintiff makes his claim, but never provides the Court with any evidence to support it.

Finally, plaintiff's allegations concerning Wyatt and the accounting firm deal with defendant only tangentially. Even had plaintiff provided evidence in support of them, they would not support a finding of malice on defendant's part. We therefore conclude that plaintiff failed in his burden to produce an evidentiary forecast sufficient to support a showing of actual malice. There is simply no indication that defendant made the statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not," *Sullivan*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706, or that he "entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731, 20 L. Ed. 2d at 267.

Even had plaintiff satisfied his burden, however, he would need to produce an evidentiary forecast to support a *prima facie* showing of special damages to survive defendant's motion for summary judgment on his claim of libel *per quod. See Renwick*, 310 N.C. at 312, 316 S.E.2d at 408 (holding that when a publication is libelous *per quod*, the injurious character of the words and some special damage must be pleaded and proved). This Court has distinguished special damages from general damages as follows:

> General damages are the natural and necessary result of the wrong, are implied by law, and may be recovered under a general allegation of damages. But special damages, those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand.

*Rodd v. W.H. King Drug Co.*, 30 N.C. App. 564, 568, 228 S.E.2d 35, 38 (1976). Plaintiff has not produced an evidentiary forecast sufficient to make a *prima facie* showing of special damages.

There is simply no evidence in the record, beyond pure speculation, that shows that County Manager Wyatt terminated plaintiff's

employment because of defendant's publications. Wyatt testified in his deposition that his termination of plaintiff was because of (1) the consulting report, (2) Wyatt's perception that plaintiff did not go through the proper considerations before making this transfer, and (3) Wyatt's suspicion that plaintiff lied to Wyatt about a budget amendment approving the transfer.

There is no evidence supporting the proposition that defendant's allegedly defamatory statements led to plaintiff's termination; we therefore require plaintiff to produce some evidentiary forecast sufficient to make a *prima facie* showing of some other kind of special damages. Plaintiff has failed to do so. Because plaintiff is unable to produce an evidentiary forecast sufficient to show that defendant's publications were made with actual malice or caused special damage to plaintiff, plaintiff has failed to show a *prima facie* case of libel *per quod*. Furthermore, none of the statements at issue are potentially libel *per se*. Accordingly, the trial court's grant of summary judgment on plaintiff's libel claims was proper, and plaintiff's assignments of error are without merit.

**[2]** Plaintiff also assigns error to the trial court's grant of summary judgment of his intentional interference with contract claim. Plaintiff alleges that defendant intentionally interfered with plaintiff's employment contract with Moore County, thereby causing actual damage to plaintiff. This claim is without merit.

> To establish a claim for tortious interference with contract, a plaintiff must show: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff."

*White v. Cross Sales & Eng'g Co.*, 177 N.C. 765, 768-69, 629 S.E.2d 898, 901 (2006) (quoting *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)).

Further:

> [O]ne who is not an outsider to the contract may be liable for interfering therewith if he acted maliciously. It is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice. A person acts with legal malice if he does a wrong-

ful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties. The plaintiff's evidence must show that the defendant acted without any legal justification for his action.

*Varner*, 113 N.C. App. at 701-02, 440 S.E.2d at 298 (internal citations omitted).

Defendant was not an outsider to plaintiff's employment contract under these circumstances because, as County Commissioner, he was partly responsible for making decisions as to Moore County employees. Plaintiff must therefore show that defendant "acted without any legal justification for his action." *Id.* Even if plaintiff shows that defendant acted with ill intentions, legal malice does not exist unless plaintiff can show that defendant had no legitimate business justification for the interference. *Area Landscaping, Inc. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (finding contract bidding to be a non-malicious business motive for defendant's interference).

Defendant has satisfied his burden on summary judgment by showing that he acted out of obligation to the county; this constituted a legitimate business justification for his actions. Thus, there is insufficient evidence to support a *prima facie* showing of "legal malice." The burden shifts to plaintiff to produce an evidentiary forecast sufficient to make a *prima facie* showing that such a motivation did not exist. Plaintiff fails to carry this burden. Plaintiff's assignment of error is therefore without merit, and the judgment of the trial court is

AFFIRMED.

Judges McGEE and BRYANT concur.