HIEN NGUYEN, MATTHEW BROWN, RYAN CHILDREY, ROMAINE WATKINS, AND DAVID GREGORY, PLAINTIFFS v. JAYCEON TAYLOR, ENGEL THEDFORD, MICHAEL KIMBREW, JOHN DOE A/K/A DJ SKEE, ANTHONY TORRES, BLACK WALL STREET RECORDS, LLC, BLACK WALL STREET PUBLISHING, LLC, BUNGALO RECORDS, INC., GENERAL GFX, GRIND MUSIC, INC., JUMP OFF FILMS, LIBERATION ENTERTAINMENT, INC., JOHN DOE #2, WWW.STOP-SNITCHIN-STOPLYIN.COM, UNIVERSAL HOME VIDEO, INC., AND YOUTUBE, INC., DEFENDANTS

No. COA08-1469

(Filed 20 October 2009)

**Appeal and Error— interlocutory orders—multiple defamation claims from mall incident—possibility of inconsistent verdicts—substantial right not shown**

Plaintiffs' appeal was dismissed as interlocutory where multiple defamation claims were filed, some were dismissed, and plaintiffs did not show that they would be prejudiced by inconsistent verdicts in separate proceedings.

Appeal by plaintiffs from order entered 5 August 2008 by Judge Richard W. Stone in Guilford County Superior Court. Heard in the Court of Appeals 20 May 2009.

*Cranfill Sumner & Hartzog, LLP, by Dan M. Hartzog, for plaintiff-appellants.*

*Carruthers & Roth, P.A., by Norman F. Klick, Jr., Robert N. Young, and Kevin A. Rust, for defendant-appellees.*

STEELMAN, Judge.

Where plaintiffs appeal an interlocutory order that does not contain a Rule 54(b) certification and fail to show a substantial right will be adversely affected if the order is not immediately reviewed, the appeal is dismissed.

## I. Factual and Procedural Background

On 28 October 2005, Jayceon Taylor a/k/a the rap artist "The Game" (Taylor) was scheduled to perform a concert in Winston-Salem, North Carolina. Earlier that day, Taylor and his entourage visited the Four Seasons Mall in Greensboro. During this visit, a member of Taylor's entourage carried a video camera and recorded the events that transpired while they were inside the mall. A mall security guard advised Taylor that filming inside the mall without permission from management was prohibited and requested that it cease immediately. Taylor refused to comply with the security guard's request and was asked to leave the premises. Taylor refused and the Greensboro Police Department was contacted for assistance. Plaintiffs Romaine Watkins (Watkins), David Gregory (Gregory), and Matthew Brown (Brown), who were all police officers working off-duty at the mall, responded to the security guard's call and repeatedly requested that Taylor and his entourage leave the premises. Taylor allegedly responded by making threatening comments and engaging in disorderly conduct. By that time, a large crowd had gathered and several people began shouting words of encouragement to Taylor.

Officers determined that there was probable cause to arrest Taylor for criminal trespass, communicating threats, and disorderly conduct. Watkins attempted to arrest Taylor, but he physically resisted. When members of his entourage refused to stay back and advanced towards the officers, pepper spray was deployed in the direction of the crowd and an "emergency 'need assistance' radio distress call" was placed. Additional officers, including plaintiffs

Ryan Childrey (Childrey) and Hien Nguyen (Nguyen), arrived. Taylor was arrested and transported to the Guilford County Jail. Following his release on bail, Taylor made the following statement to a local reporter:

> They thought I was Rodney King, man. You know what I'm saying? It was mistaken identity. They thought I was Rodney King. Once I told them I was The Game, they let me out the gate. Nah, but they really kicked our (censored). I would play the racial card, but I think we use that too much. But I don't know man. But the force against . . . We're here for a concert and I got arrested for signing autographs. Signing a little girl's autograph got me arrested in North Carolina. I gotta bring up a case against the Guilford Police Department. I gotta do it man. It's unfair, man. Their behavior's unfair. You saw the tape? You know what went on . . . I don't know man, you're gonna have to ask Officer Watkins exactly. Soon as I wake up in the morning, I'll be on the phone with my lawyers.

The altercation at the mall was also recorded on video tape by a member of Taylor's entourage. The footage appeared on a DVD, which was released in January 2006 under the name "Stop Snitchin' Stop Lyin'." The image of Officer Brown was placed on the back cover of the DVD, above the caption "Exclusive: The full 15 minute footage of The Game being wrongfully arrested in North Carolina." The DVD was advertised on the website www.stopsnitchinstoplyin.com. In a section of the website entitled "About the DVD" the following statement appeared: "Also DVD Includes the Following Bonus Features: Entire footage of Game being wrongfully arrested and brutalized by the Police in North Carolina." This footage also appeared on the website www.youtube.com.

On 30 October 2006, plaintiffs filed a complaint against defendants alleging seventeen separate claims. The first five claims were asserted solely against Taylor and included: (1) slander *per se*; (2) slander *per quod*; (3) libel *per se*; (4) libel; and (5) libel *per quod*. These causes of action were based upon Taylor's statement to the reporter after his release from jail.

Claims number six through fifteen and seventeen were asserted against Taylor, Engel Thedford, Michael Kimbrew, DJ Skee, Anthony Torres, Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, Bungalo Records, Inc., General GFX, Grind Music, Inc., Jump Off Films, Liberation Entertainment, Inc., John Doe, www.stopsnitchinstoplyin.com, and Universal Home Video, Inc. Claims six,

seven, and eight alleged libel *per se*, libel, and libel *per quod*, respectively, based upon the statement on the website www.stopsnitchin-stoplyin.com that Taylor was wrongfully arrested and brutalized by the police in North Carolina. The same causes of action were also asserted in claims nine, ten, and eleven based upon the statement found on the back cover of the DVD. Based upon the misleading editing of the video, plaintiffs asserted claims thirteen, fourteen, and fifteen also for libel *per se*, libel, and libel *per quod*. Claim twelve alleged wrongful appropriation of a likeness based on the use of plaintiffs' images on the video tape and Officer Brown's picture on the back cover of the DVD case. Claim sixteen alleged appropriation against Youtube, Inc. and claim seventeen alleged unfair and deceptive trade practices.

Although the complaint was filed on 30 October 2006, the record indicates that plaintiffs continued to attempt to effect service on defendants as late as March of 2008. The record before this Court is devoid of any evidence of service or responsive pleadings pertaining to defendants other than Taylor, Black Wall Street Publishing, LLC, Jump Off Films, and Black Wall Street Records, LLC. The record indicates that a default was entered against Black Wall Street Records, LLC.

On 22 June 2007, defendants Taylor, Black Wall Street Records, LLC, Black Wall Street Publishing, LLC, and Jump Off Films filed an answer, which denied the material allegations of plaintiffs' complaint and asserted several affirmative defenses. On 18 June 2008, defendants Taylor, Black Wall Street Publishing, LLC, and Jump Off Films filed a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. On 5 August 2008, the trial court granted defendants' motion in part and denied it in part. The trial court dismissed with prejudice plaintiffs' claims one through seven, nine, and ten as to the moving defendants. The trial court also dismissed claims eight and eleven of plaintiffs Nguyen, Brown, and Gregory as to the moving defendants, but denied the motions as to plaintiffs Childrey and Watkins. The trial court denied the motions of the moving defendants as to claims thirteen, fourteen, and fifteen. In addition, the trial court dismissed with prejudice plaintiffs' claims six through eleven, thirteen, fourteen, and fifteen as to Black Wall Street Publishing, LLC based upon the applicable statute of limitations. The trial court's order does not address plaintiffs' claims twelve or seventeen for appropriation and unfair and deceptive trade practices. Plaintiffs appeal.

## II. Interlocutory Nature of Appeal

We first address defendants' motion to dismiss plaintiffs' appeal as interlocutory. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *See Veazy v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). An interlocutory order is not immediately appealable except in two instances: (1) the trial court certifies that there is no just reason for delay pursuant to Rule 54(b) of the Rules of Civil Procedure and (2) the interlocutory order affects a substantial right which will be lost if the order is not reviewed before a final judgment is entered. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994).

In the instant case, the trial court did not certify its order as immediately appealable pursuant to Rule 54(b).[1] Therefore, the burden is on plaintiffs to establish that a substantial right will be lost unless the trial court's order is immediately reviewed. *Id.* at 380, 444 S.E.2d at 254. "[T]he 'substantial right' test . . . is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Blackwelder v. State Dept. of Human Resources*, 60 N.C. App. 331, 334, 299 S.E.2d 777, 780 (1983) (quotations omitted).

Plaintiffs argue that the trial court's order affects a substantial right based upon the possibility of inconsistent jury verdicts. It is well-established that before a substantial right is affected on this basis, it must be shown that the same factual issues are present in both trials and that plaintiffs will be prejudiced by the possibility that inconsistent verdicts may result. *Moose v. Nissan of Statesville*, 115 N.C. App. 423, 426, 444 S.E.2d 694, 697 (1994). Avoiding separate trials on different issues does not affect a substantial right. *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 7, 362 S.E.2d 812, 816 (1987).

Plaintiffs argue that the issues before this Court on appeal and the issues that remain in the trial court are all based upon the same operative facts and pertain to Taylor's arrest and the subsequent characterizations of the arrest. Therefore, plaintiffs contend that separate trials on the same issues could possibly produce inconsistent verdicts

---

1. Plaintiffs specifically requested a Rule 54(b) certification and Judge Stone declined to include it in his order.

if we do not immediately review the trial court's order. However, a close review of plaintiffs' claims and the conduct upon which they are based reveals that plaintiffs' argument is misplaced.

In order to prove libel *per se* at trial, plaintiffs will have to show that the publication, "when considered alone without innuendo tends to subject one to ridicule, public hatred, contempt or disgrace, or tends to impeach one in his trade or profession." *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979).

> The initial question for the court in reviewing a claim for libel *per se* is whether the publication is such as to be subject to only one interpretation. If the court determines that the publication is subject to only one interpretation, it then "is for the court to say whether that signification is defamatory." It is only after the court has decided that the answer to both of these questions is affirmative that such cases should be submitted to the jury on a theory of libel *per se*.

*Renwick v. News and Observer*, 310 N.C. 312, 318, 312 S.E.2d 405, 409 (internal quotation and citation omitted), *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). The second type of libel is said to arise when the publication is capable of having both a defamatory meaning and a non-defamatory meaning. *Id.* at 316, 312 S.E.2d at 408. In such cases, "it is for the jury to determine which of the two was intended and so understood by those to whom it was addressed or by whom it was heard." *Wright v. Credit Co.*, 212 N.C. 87, 89, 192 S.E. 844, 845 (1937) (quotation omitted). The third type of libel, libel *per quod*, may be asserted when a publication is not obviously defamatory, but when considered in conjunction with innuendo, colloquium, and explanatory circumstances it becomes libelous. *Ellis v. Northern Star Co.*, 326 N.C. 219, 223, 388 S.E.2d 127, 130 (1990). "In publications which are libelous *per quod*, the innuendo and special damages must be alleged and proved." *Arnold*, 296 N.C. at 537, 251 S.E.2d at 455 (citation omitted).

The claims originally asserted by plaintiffs fall into seven broad categories: (1) claims against Taylor based upon his statement to the reporter following his release from jail; (2) claims based upon statements found on the website www.stopsnitchinstoplyin.com; (3) statements found on the back of the DVD case; (4) the misleading editing of the DVD; (5) appropriation of a likeness based upon the back of the DVD case; (6) appropriation of a likeness based upon the video found on Youtube, Inc.; and (7) unfair and deceptive trade practices.

While plaintiffs are correct that all of these claims ultimately arise out of the incident at Four Seasons Mall in Greensboro, they are not correct in asserting that this creates a substantial right based upon the possibility of inconsistent verdicts and supports this Court's hearing of an interlocutory appeal.

What this Court must analyze is not the underlying factual events that occurred at Four Seasons Mall, but rather the statements describing the events that plaintiffs contend gives rise to their claims for libel and slander. We must then ascertain whether the trial court's dismissal of a portion of these claims creates a possibility of inconsistent verdicts.

Claims one through five were directed solely at Taylor. Whether Taylor's statements to the reporter following his release from jail are libelous or slanderous is an independent claim from those arising from the statements on the website, on the back of the DVD case, or the editing of the DVD. Each statement or writing must be evaluated separately to determine whether it is libelous or slanderous. The trial court's dismissal of claims one through five does not create a possibility of inconsistent verdicts as to any of the surviving claims.

Claims six, seven, and eight are based upon statements found on the website. The trial court dismissed claims six and seven as to the moving defendants and dismissed the libel *per quod* claims contained in claim eight of plaintiffs Nguyen, Brown, and Gregory. The libel per quod claims were not dismissed as to plaintiffs Childrey and Watkins. The dismissal of the libel *per se* and libel claims based upon the website has no bearing on the other claims not based on the website. To state a claim for libel *per quod*, a party must specifically allege and prove special damages as to each plaintiff.[2] *See Griffin v. Holden*, 180 N.C. App. 129, 138, 636 S.E.2d 298, 305 (2006) ("[S]pecial damages [are] those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand." (quotation omitted)); *see also Stanford v. Owens*, 46 N.C. App. 388, 398, 265 S.E.2d 617, 624 ("[S]pecial damages must be pleaded with sufficient particularity to put defendant on notice." (citations omitted)), disc. review denied, 301 N.C. 95 (1980). Proof of special damages is not required in claims of either libel *per se* or libel.

---

2. We note that plaintiffs failed to plead special damages with regard to Nguyen, Brown, and Gregory in claims eight and eleven. As a result, the trial court properly dismissed these claims as to these plaintiffs.

NGUYEN v. TAYLOR

[200 N.C. App. 387 (2009)]

The dismissal of claims six, seven, and a portion of claim eight does not create a possibility of inconsistent verdicts as to any of the surviving claims. Claims six and seven are limited to the website. Since libel *per quod* specifically requires the pleading of special damages, these claims are limited to the specific plaintiff and the dismissal as to one plaintiff does not create a possibility of inconsistent verdicts as to the surviving claims.

For the reasons discussed above as to claims six, seven, and eight, the dismissal of claims nine, ten, and a portion of claim eleven based upon statements on the DVD case does not create a possibility of inconsistent verdicts as to the surviving claims.

Plaintiffs' remaining claims involve the wrongful appropriation of a likeness, libel based upon the misleading editing of the video, appropriation by You Tube, Inc., and unfair and deceptive trade practices. These claims are separate and distinct having different elements than the dismissed libel claims. As to the remaining claims, the dismissal of the claims above does not create a possibility of inconsistent verdicts.

Although the facts involved in the claims remaining before the trial court may overlap with the facts involved in the claims that have been dismissed, plaintiffs have failed to show that they will be prejudiced by the possibility of inconsistent verdicts in two separate proceedings. Accordingly, plaintiffs have failed to establish that a substantial right will be lost unless the trial court's order is immediately reviewed. Plaintiffs' appeal is dismissed as interlocutory.

DISMISSED.

Judges GEER and JACKSON concur.