An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-488

Filed 21 January 2026

Mecklenburg County, No. 24CV030897-590

THE ESTATE OF JAMIELLE LAMAR CLEMENTS, BY AND THROUGH ITS ADMINISTRATRIX, DEANA COSBY, Plaintiff,

v.

ARC NCCHRNC001, LLC; HIFFMAN ASSET MANAGEMENT, LLC D/B/A "HIFFMAN NATIONAL"; DENISE MANN; S&S MANAGEMENT GROUP, LLC D/B/A "SECURITY SOLUTIONS OF AMERICA"; FUN EATS & DRINKS, LLC D/B/A "FOX & HOUND BAR & GRILL"; JERRY THOMAS; ALDO EUGENE BROZZETTI; PATRICK QUERRY; FIREBIRDS OF CHARLOTTE, LLC; KEENAN DOLIVEIRA; AND JUSTICE DAVIS, Defendants.

Appeal by Plaintiff from an order entered 5 February 2025 by Judge Matthew John Osman in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 October 2025 in session at High Point University School of Law in the City of High Point pursuant to N.C. Gen. Stat. § 7A-19(a).

*Howard Stallings Law Firm, by Matthew T. Langston and Robert H. Jessup, IV, for the Plaintiff-Appellant.*

*McAngus, Goudelock & Courie, PLLC, by Jeffrey B. Kuykendal, for the Defendants-Appellees.*

WOOD, Judge.

The Estate of Jamielle Lamar Clements, by and through its Administratrix, Deanna Cosby ("Plaintiff") appeals from the trial court's order granting Defendant's, Firebirds of Charlotte, LLC d/b/a "Firebirds Wood Fired Grill" ("Firebirds"), Rule 12(b)(6) motion to dismiss. Interlocutory appeals may be heard in limited circumstances, however, after careful review of the record and applicable law we conclude this interlocutory order is unappealable as the trial court did not certify the order as immediately appealable under Rule 54(b) and no substantial right is affected. Thus, for those reasons the appeal must be dismissed for lack of appellate jurisdiction.

## I. Factual and Procedural Background[1]

On 5 October 2022, Keenan Doliveira ("Doliveira") went to Firebirds Wood Fired Grill located at Northlake Mall. Doliveira was a "well-known regular" at Firebirds and, on this evening, consumed many alcoholic beverages. "[D]espite the fact that he became, and appeared, visibly intoxicated, Defendant Firebirds' bartenders continued serving [] Doliveira alcoholic beverages, primarily liquor." Plaintiff alleges Firebirds' employees continued to serve Doliveira "past the point of intoxication [that] could cause him to engage in behaviors that may endanger himself and others."

---

[1] The factual and procedural background section as written presumes that the factual allegations in Plaintiff's complaint are true.

After leaving Firebirds sometime after 9:00 p.m., Doliveira drove to Northlake Commons Shopping Center ("Northlake Commons") where he "loitered in the parking lot smoking cigarettes," then entered the Fox & Hound restaurant and sat at the bar. When Doliveira attempted to purchase an alcoholic beverage, one of the bartenders suspected his credit card may be fraudulent and asked Doliveira about it. In response, Doliveira insulted the bartender prompting Christopher Lynch ("Lynch"), the manager on duty, to be called over. When Lynch informed Doliveira that his credit card appeared to be fraudulent the situation escalated. Doliveira yelled at Lynch, "I'll smack the s*** out of you!" causing Lynch to laugh, which further heated the situation. Ultimately, security personnel escorted Doliveira out of Fox & Hound; and Doliveira pushed Lynch on the way out. Once outside, Doliveira yelled, "I'll shoot everyone!" Fox & Hound employees attempted to find a Northlake Commons security guard, but no further action was taken.

Doliveira remained at Northlake Commons, harassed patrons and businesses while wearing a ski mask, and attempted to break into a tobacco and vape shop. Northlake Commons security guards did not respond.

At approximately 10:21 p.m., Doliveira, still wearing the ski mask, returned to Fox & Hound with Justice Davis ("Davis"). Fox & Hound employees recognized Doliveira from earlier in the evening and immediately searched for the security guard. When they could not find the security guard, a bartender yelled to the kitchen staff for help. Jamielle Lamar Clements ("Jamielle") was one of the kitchen staff

members to respond to the bartender's yell for help. When Doliveira "shouted and threatened everyone in the vicinity," Jamielle diverted Doliveira's attention away from everyone and onto himself. Everyone then moved outside into the common area of Northlake Commons as a fight broke out between Doliveira and Jamielle. Davis handed Doliveira a gun, causing the crowd to scatter. Doliveira fired five shots into the crowd, four of which hit Jamielle. Doliveira then "severely beat [Jamielle] on the head with [the] gun" while he lay unconscious on the ground. Jamielle was pronounced dead at approximately 11:46 p.m.

On 8 July 2024, Plaintiff filed a complaint alleging seven claims for relief against eleven defendants involved in the circumstances on the night of Jamielle's death. Plaintiff's fifth claim for relief against Firebirds and Fox & Hound restaurants asserted negligence, negligence *per se*, gross negligence, and gross negligence *per se* under dram shop liability. On 13 September 2024, Firebirds filed a motion to dismiss pursuant to Rule 12(b)(6), a motion to bifurcate pursuant to N.C. Gen. Stat. § 1D-30, and an answer asserting eight affirmative defenses.

Firebirds asserted the following affirmative defenses: (1) Firebirds "did not owe any legal duty to the Plaintiff and to the extent it did owe such duty, the duty was not breached"; (2) contributory negligence, alleging Jamielle had failed to follow policies and procedures of his employer, escalated the altercation, and "placed himself in a position of peril which he knew or should have known could have led to harm"; (3) intervening and superseding negligence by other parties; (4) Firebirds actions

were not the proximate cause of the harm caused by Doliveira and Davis because their actions were not reasonably foreseeable; (5) Firebirds is entitled to a set-off or reduction of any amount Plaintiff may obtain from verdict against them to the extent Plaintiff has been paid by another party or will be paid by another party; (6) request for spoliation instruction at trial; (7) employer negligence pursuant to N.C. Gen. Stat. § 97-10.2(e) in that Fox & Hound failed to train Jamielle; and (8) reservation of right to assert other affirmative defenses following discovery.

On 23 January 2025, the trial court conducted a hearing and granted Firebirds' motion to dismiss pursuant to Rule 12(b)(6), dismissing all claims against Firebirds with prejudice. The trial court declined to certify its order for immediate appeal under Rule 54(b). Plaintiff filed notice of appeal on 18 February 2025.

On 25 February 2025, Hiffman Asset Management, LLC d/b/a "Hiffman National," S&S Management Group, LLC d/b/a "Security Solutions of America," Fun Eats & Drinks, LLC d/b/a "Fox & Hound Bar & Grill" and Jerry Thomas, and Firebirds (collectively "Moving Defendants") filed a motion to stay the pending appeal pursuant to N.C. Gen. Stat. § 1-294 and Rule 8(a) to stay this action while Plaintiff appeals from the order dismissing Firebirds. Moving Defendants argued that if the order granting Firebirds motion to dismiss is immediately appealable, the trial court must stay the remaining claims of the case until the appeal is resolved. On 4 April 2025, the trial court filed its order denying the motion to stay pending appeal.

## II. Analysis

Plaintiff argues the trial court erred by dismissing the claims against Firebirds because: (1) the complaint set out a "prima facie negligence case against Firebirds for its conduct that violated the Dram Shop Act"; and (2) the trial court erred by determining "Jamielle's death was not foreseeable and that a Dram Shop claim does not extend to violent acts of an intoxicated person." While Firebirds argues Jamielle's death was not foreseeable and the trial court's order should be affirmed, they first contend this appeal should be dismissed as interlocutory prior to reaching the merits.

## A. Interlocutory Appeal

"Ordinarily, this Court hears appeals only after entry of a final judgment that leaves nothing further to be done in the trial court." *Denney v. Wardson Constr., Inc.*, 264 N.C. App. 15, 17, 824 S.E.2d 436, 438 (2019) (quoting *Crite v. Bussey*, 239 N.C. App. 19, 20, 767 S.E.2d 434, 435 (2015)). In the case *sub judice*, Plaintiff concedes this appeal is interlocutory but contends we should review their appeal on the merits because a substantial right would be affected otherwise. In contrast, Firebirds contends this appeal should be dismissed as no substantial right would be affected by denying immediate review. We agree.

This Court utilizes a two-part test to determine whether an interlocutory order is appealable in the absence of a Rule 54(b) certification. It must first be determined "whether a substantial right is affected by the challenged order and," second, "whether this substantial right might be lost, prejudiced, or inadequately preserved in the absence of an immediate appeal." *Hamilton v. Mortg. Info. Servs., Inc.*, 212

N.C. App. 73, 78, 711 S.E.2d 185, 189 (2011). "Whether a particular ruling 'affects a substantial right must be determined on a case-by-case basis.'" *Doe v. City of Charlotte*, 273 N.C. App. 10, 22, 848 S.E.2d 1, 10 (2020) (quoting *Hamilton*, 212 N.C. App. at 78, 711 S.E.2d at 189). "The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature." *Hamilton*, 212 N.C. App. at 77, 711 S.E.2d at 189.

To meet their burden, "the appellant must include in its *opening brief*, in the statement of the grounds for appellate review, 'sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.'" *Denney*, 264 N.C. App. at 17, 824 S.E.2d at 438 (emphasis added) (quoting *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 77, 772 S.E.2d 93, 95 (2015)). "The appellant[] must present more than a bare assertion that the order affects a substantial right; they must demonstrate *why* the order affects a substantial right" and apply the particular facts of the case at issue. *Greenbrier Place, LLC v. Baldwin Design Consultants, P.A.*, 280 N.C. App. 144, 146, 866 S.E.2d 332, 335 (2021) (quoting *Hoke Cnty. Bd. of Educ. v. State*, 198 N.C. App. 274, 277-78, 679 S.E.2d 572, 576 (2009)).

### 1. *Inconsistent Verdicts*

In the case *sub judice*, Plaintiff argues that a substantial right is affected because "[t]he risk of inconsistent verdicts arises from the element of proximate cause" and proximate cause is the main issue in dispute. Specifically, Plaintiff asserts

in their opening brief:

> A jury could reasonably find that any negligence by the remaining defendants, such as a failure to adequately secure the premises on which Jamielle was killed, was not the proximate cause of Jamielle's death. Its basis could be that Firebirds' negligence in overserving Doliveira caused his intoxication, set the stage for his conduct ending in Jamielle's death, and was a superseding cause that shields those defendants from liability. However, if the Estate is later able to reassert claims against Firebirds in a separate trial, a different jury might reasonably find that Firebirds could not have foreseen Doliveira's violent conduct or that negligence by one or more of the other defendants was an intervening cause that shields Firebirds from any liability. These conflicting outcomes would be irreconcilable and undermine the fairness of the judicial process, along with plainly prejudicing and harming the Estate.

This Court has held that the "risk that a litigant may be forced to endure two trials, rather than one, does not by itself implicate a substantial right, even if those separate trials involve related issues or stem from the same underlying event." *Doe*, 273 N.C. App. at 21, 848 S.E.2d at 10. "The inconsistent verdicts doctrine is a subset of the substantial rights doctrine" and the "appellant is required to show 'that the same factual issues are present in both trials *and* that appellants will be prejudiced by the possibility that inconsistent verdicts may result.'" *Greenbrier Place*, 280 N.C. App. at 147, 866 S.E.2d at 335 (quoting *Nguyen v. Taylor*, 200 N.C. App. 387, 391, 684 S.E.2d 470, 473 (2009)). "[T]he appellant cannot meet its burden under the inconsistent verdicts doctrine simply by asserting that 'the facts involved in the claims remaining before the trial court may overlap with the facts involved in the

claims that have been dismissed,'" it must be explained to this Court how, "in a second trial on the challenged claims, a second fact-finder might reach a result that cannot be reconciled with the outcome of the first trial." *Doe*, 273 N.C. App. at 21, 848 S.E.2d at 10 (quoting *Hamilton*, 212 N.C. App. at 80-81, 711 S.E.2d at 191).

Plaintiff argues litigating their claims against Firebirds separately from the claims against the remaining defendants could cause inconsistent verdicts because different juries could reach different conclusions regarding the proximate cause of Jamielle's death. However, as this Court determined in *Hamilton*, even when an appellant makes an argument that facts across claims may overlap, like Plaintiff has done here, if there is a difference in the manner in which the "facts will be viewed during the jury's consideration of each class of claims," it may not necessarily lead to inconsistent verdicts if separate juries reach different factual conclusions on an element of a claim. 212 N.C. App. at 83, 711 S.E.2d at 192. Here, Plaintiff has asserted five negligence based claims for relief against nine of the eleven defendants that are based on different theories of liability. Specifically, Plaintiff has asserted claims for negligence, negligence *per se*, gross negligence, and gross negligence *per se* under the theory of dram shop liability against Firebirds. Two of the other causes of action against remaining defendants were brought under the theory of premises liability, while the others were brought under ordinary negligence. Whether each alleged negligent act by defendants is a proximate cause of Jamielle's death will need to be determined as to each claim "does not, standing alone, establish that separate

consideration of these claims creates a risk of inconsistent verdicts given the difference in the nature of the inquiry that must be conducted as part of the evaluation of those claims." *Id.* at 84, 711 S.E.2d at 193.

Next, we look to Plaintiff's assertion that "conflicting outcomes would be irreconcilable and undermine the fairness of the judicial process, along with plainly prejudicing and harming the Estate." We conclude Plaintiff has not met their burden in explaining how "a second fact-finder might reach a result that cannot be reconciled with the outcome of the first trial." *Doe*, 273 N.C. App. at 21, 848 S.E.2d at 10. As stated *supra*, an appellant has the burden to explain how they "will be prejudiced by the possibility that inconsistent verdicts may result." *Greenbrier Place*, 280 N.C. App. at 147, 866 S.E.2d at 335 (quoting *Nguyen*, 200 N.C. App. at 391, 684 S.E.2d at 473). Plaintiff's argument regarding prejudice is conclusory and does not apply the specific facts of the case at hand nor demonstrate how *this* case will be prejudiced by a risk of inconsistent verdicts.

Consequently, Plaintiff has failed to meet their burden of advancing "sufficient facts and arguments to support appellate review on the ground that the challenged order affects a substantial right." *Denney,* 264 N.C. App. at 17, 824 S.E.2d at 438 (2019) (quoting *Larsen,* 241 N.C. App. at 77, 772 S.E.2d at 95).

### III.    Conclusion

For the reasons stated herein, Plaintiff's appeal is from an unappealable interlocutory order. Thus, we dismiss the appeal for lack of appellate jurisdiction.

DISMISSED.

Chief Judge DILLON and Judge TYSON concur.

Report per Rule 30(e).