KAY R. HAMILTON, on behalf of herself and all other similarly situated, Plaintiff v. MORTGAGE INFORMATION SERVICES, INC., and FIRST AMERICAN TITLE INSURANCE COMPANY, Defendants

No. COA10-45

(Filed 17 May 2011)

**Appeal and Error— interlocutory orders and appeals—partial denial of class certification—no jurisdiction**

The Court of Appeals lacked jurisdiction over plaintiff's appeal from an interlocutory order under N.C.G.S. §§ 1-277(a) and 7A-27(d)(1) that partially denied class certification. Plaintiff failed to show a substantial right or the risk of inconsistent verdicts. Further, the Court of Appeals declined plaintiff's request to treat its appeal as a petition for *certiorari*.

Appeal by Plaintiff from order entered 10 November 2009 by Judge Ripley E. Rand in Wake County Superior Court. Heard in the Court of Appeals 29 September 2010.

> *Hartzell & Whiteman, L.L.P., by J. Jerome Hartzell; Financial Protection Law Center, by Mallam J. Maynard, Maria D. McIntyre, and Andrea B. Young; North Carolina Justice Center, by Carlene McNulty; Puryear & Lingle, PLLC, by David B. Puryear, Jr., for Plaintiff-Appellant.*

> *Bailey & Dixon, L.L.P., by Dayatra T. Matthews, G. Lawrence Reeves, Jr., and Jeffrey D. McKinney, for Defendant-Appellee Mortgage Information Services, Inc.*

> *Ellis & Winters, LLP, by Matthew W. Sawchak, and Stephen D. Feldman; Sonnenschein Nath & Rosenthal, LLP, by Charles A. Newman and Jason Maschmann, for Defendant-Appellee First American Title Insurance Co.*

ERVIN, Judge.

Plaintiff Kay R. Hamilton appeals from an order entered on 10 November 2009 to the extent that the order partially granted dismissal motions filed by Defendants First American Title Insurance Company (First American) and Mortgage Information Services, Inc. (MIS), and partially denied Plaintiff's request for class certification. After careful consideration of the record in light of the applicable law, we conclude that Plaintiff's appeal has been taken from an unappealable interlocutory order and must, for that reason, be dismissed.

## I. Factual Background

On 22 April 2005, Plaintiff procured a home loan from Ameriquest Mortgage Company. As part of this transaction, Ameriquest engaged MIS, acting as a settlement agent, to provide services in connection with Plaintiff's loan. In exchange for these services, Plaintiff was charged various fees, which were paid from the proceeds of Plaintiff's loan.

On 25 August 2008, Plaintiff filed a complaint in Wake County Superior Court against First American and MIS.[1] In her complaint, Plaintiff alleged that the charging of certain fees associated with her loan constituted an unfair and deceptive trade practice, actionable pursuant to N.C. Gen. Stat. § 75-1.1, and that Defendants "charged numerous other North Carolina borrowers similarly inappropriate fees in connection with their mortgages, thereby giving rise to a class action." More specifically, Plaintiff challenged the following seven fees:

| | |
|---|---|
| Closing fee to MIS | $325.00 |
| Title search [fee] to MIS | $225.00 |
| Title clearing [fee] to MIS | $75.00 |
| Title insurance binder [fee] to MIS | $50.00 |
| Signing fee to Mobile Closings | $250.00 |
| Title insurance | $371.60 |
| Courier Fee to MIS | $60.00 |

The claims asserted in Plaintiff's complaint fall into several categories: (1) claims that certain fees represented payments to a non-lawyer for the provision of legal services; (2) claims that certain payments involved the unlawful division of fees for legal services between lawyers and non-lawyers; (3) claims that certain fees violated the prohibition contained in N.C. Gen. Stat. § 28-8(d) against the charging of unreasonable third party fees associated with loan-related goods, products, or services; (4) claims that certain fees violated N.C. Gen. Stat. § 58-33-85(b) because Plaintiff did not consent in advance and in writing to the imposition of those fees; (5) claims that work for which certain fees were charged was not performed properly; (6) claims that certain fees were not permitted by the rate filing that First American had made with the North Carolina Department of Insurance; (7) claims that certain fees exceeded the level authorized by the North Carolina Notary Public Act; (8) claims that the services

---

1. Plaintiff contends that MIS and First American had a principal-agent relationship, making them jointly liable to Plaintiff.

associated with certain fees were not performed at all; and (9) claims that closing insurance was issued in violation of N.C. Gen. Stat. § 58-26-1.

On 25 November 2008, this case was classified as an Exceptional Case pursuant to Rule 2.1 of the General Rules of Practice and assigned to the trial court. On 27 October 2008, Defendants filed separate dismissal motions.[2] On 27 February 2009, Plaintiff filed a Motion for Class Certification. The trial court heard Defendants' dismissal motions on 8 May 2009 and Plaintiff's class certification motion on 4 June 2009.

On 10 November 2009, the trial court entered an order granting Defendants' dismissal motions in part and denying them in part and granting Plaintiff's class certification motion in part and denying it in part. The trial court dismissed all of the claims asserted in Plaintiff's complaint except the claim pertaining to the following:

1. The "closing fee" as it relates to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d). This allegation survives as to Defendant MIS only.

2. The "title search" fee as it relates to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d). This allegation survives as to Defendant MIS only.

3. The "title clearing" fee as it relates to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d). This allegation survives as to Defendant MIS only.

4. The "title binder" fee as it relates to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d). This allegation survives as to both Defendant MIS and First American.

5. The "signing fee" as it relates to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d), the amount that it was in excess of that set forth in the Notary Public Act, and the failure of Defendant MIS to provide the services associated with it under N.C. Gen. Stat. § 24-8(d). These allegations survive· as to Defendant MIS only.

6. The "title insurance" fee as it relates to the conduct of Defendant MIS and Defendant First American in failing to offer the "reissue" rate set forth in First American's rate filing at the

---

2. MIS amended its dismissal motion on 27 February 2009.

North Carolina Department of Insurance. These allegations survive as to both Defendant MIS and Defendant First American.

7. The "courier fee" as to the unreasonableness of the fee under N.C. Gen. Stat. § 24-8(d) and the failure of Defendant MIS to provide the services associated with it under N.C. Gen. Stat. § 24-8(d). These allegations survive as to Defendant MIS only.

In addition, the trial court granted class certification[3] with respect to the following issues:

. . . (a) whether the "signing fee" imposed by Defendant MIS was in excess of that prescribed by the Notary Public Act; (b) whether Defendants MIS and First American failed to provide the services associated with the "signing fee" imposed by Defendant MIS; (c) whether the failure of Defendants MIS and First American to offer the "reissue rate" for a title insurance policy in the imposition of the "title insurance fee" violate[d] the filed rate doctrine; and (d) whether Defendant MIS failed to provide the services associated with the Acourier fee" imposed by Defendant MIS.

Plaintiff noted an appeal to this Court on 25 November 2009. Subsequently, Defendants moved for dismissal of Plaintiff's appeal.

## II. Legal Analysis

### A. Interlocutory Appeal

An order is either "interlocutory or the final determination of the rights of the parties." N.C. Gen. Stat. § 1A-1, Rule 54(a). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 354, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). The order from which Plaintiff has attempted to appeal in this case is clearly interlocutory given that it does not dispose of all claims as to either Defendant. *See Pratt v. Staton*, 147 N.C. App. 771, 773, 556 S.E.2d 621, 623 (2001) (stating that "[a]n order . . . granting a motion to dismiss certain claims in an action, while leaving other claims in the action to go forward, is

---

3. The class defined in the trial court's order consisted of "[a]ll persons who were borrowers on loans made by [Ameriquest] or affiliates, and in connection with which [MIS] purportedly acted as settlement agent, and which loans: (a) were secured by real property in North Carolina; (b) were disbursed within four years prior to the institution of this civil action; and (c) were, prior to the date on which the court certifies this case as a class action, paid off, or foreclosed upon."

plainly an interlocutory order"). As a general proposition, only final judgments, as opposed to interlocutory orders, may be appealed to the appellate courts. *Steele v. Hauling Co.*, 260 N.C. 486, 491, 133 S.E.2d 197, 201 (1963) (citing *Perkins v. Sykes*, 231 N.C. 488, 490, 57 S.E.2d 645, 646 (1950)); *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990) (stating that "there is no right of immediate appeal from interlocutory orders and judgments"). Appeals from interlocutory orders are only available in "exceptional cases." *Ford v. Mann*, —— N.C. App. ——, —— 690 S.E.2d 281, 283 (2010). Interlocutory orders are, however, subject to appellate review:

> "if (1) the order is final as to some claims or parties, and the trial court certifies pursuant to [N.C. Gen. Stat.] § 1A-1, Rule 54(b) that there is no just reason to delay the appeal, or (2) the order deprives the appellant of a substantial right that would be lost unless immediately reviewed."

*Currin & Currin Constr., Inc. v. Lingerfelt*, 158 N.C. App. 711, 713, 582 S.E.2d 321, 323 (2003) (quoting *Myers v. Mutton*, 155 N.C. App. 213, 215, 574 S.E.2d 73, 75 (2002), *disc. review denied*, 357 N.C. 63, 579 S.E.2d 390 (2003)). The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). If a party attempts to appeal from an interlocutory order without showing that the order in question is immediately appealable, we are required to dismiss that party's appeal on jurisdictional grounds. *Pasour v. Pierce*, 46 N.C. App. 636, 639, 265 S.E.2d 652, 653 (1980) (citing *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 210, 240 S.E.2d 338, 344 (1978)). As a result, given the interlocutory nature of the order from which Plaintiff appeals, we are required to determine, before considering the merits of Plaintiff's challenges to the trial court's order, whether Plaintiff's appeal is properly before this Court at this time.

## B. Substantial Right

Since the order which Plaintiff appeals was not certified for immediate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b),[4]

---

4. An interlocutory order is immediately appealable if the order represents "a final judgment as to one or more but fewer than all of the claims or parties . . . [,] there is no just reason for delay[,] and it is so determined in the judgment." N.C. Gen. Stat. § 1A-1, Rule 54(b); *see also Embler v. Embler*, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001) (citation omitted). The trial court did not certify its order for interlocutory review, thus its order is not immediately appealable on this basis.

Plaintiff is only entitled to interlocutory review of the trial court's order in the event that it " 'deprives the appellant of a substantial right.' " *Currin*, 158 N.C. App. at 713, 582 S.E.2d at 323 (quoting *Myers*, 155 N.C. App. at 215, 574 S.E.2d at 75); *see also* N.C. Gen. Stat. § 1-277(a); N.C. Gen. Stat. § 7A-27(d)(1). In order to determine whether a particular interlocutory order is appealable pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1), we utilize a two-part test, with the first inquiry being whether a substantial right is affected by the challenged order and the second being whether this substantial right might be lost, prejudiced, or inadequately preserved in the absence of an immediate appeal. *Estate of Redden v. Redden*, 179 N.C. App. 113, 116, 632 S.E.2d 794, 797 (2006) (quoting *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736); *see also Blackwelder v. Dep't of Human Res.*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780-81 (1983). As a result, the extent to which Plaintiff is entitled to appeal the trial court's order hinges upon whether she has established that "delay of the appeal will jeopardize a substantial right" and "caus[e] an injury that might be averted if the appeal were allowed." *Embler*, 143 N.C. App. at 165, 545 S.E.2d at 262.

The extent to which an interlocutory order affects a substantial right must be determined on a case-by-case basis. *McCallum v. N.B. Coop. Extension Serv.*, 142 N.C. App. 48, 50, 542 S.E.2d 227, 231 (citing *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982)), *disc. review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001); *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 292, 420 S.E.2d 426, 428 (1992) (stating that, "[i]n determining which interlocutory orders are appealable and which are not, [this Court] must consider the particular facts of each case and the procedural history of the order from which an appeal is sought") (citations omitted). In making this determination, we take a "restrict[ive] view of the 'substantial right' exception to the general rule prohibiting immediate appeals from interlocutory orders.[5] *Blackwelder*, 60 N.C. App. at 334,

---

5. North Carolina's restrictive view of the substantial right exception rests upon sound policy considerations. The purpose of the general rule against allowing interlocutory appeals is the prevention of "fragmentary and premature appeals that unnecessarily delay the administration of justice[.]" *Bailey v. Gooding*, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980) (citations omitted); *see also Hunter v. Hunter*, 126 N.C. App. 705, 708, 486 S.E.2d 244, 245-46 (1997)(stating that " '[a]ppellate procedure is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final judgment' ") (quoting *Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951)). As a general practice, parties should "allow the[ir] case to proceed, and then bring the[ir] issue[s] before the Court as part of an appeal from the final judgment." *Embler*, 143

299 S.E.2d at 780 (citations omitted). As we previously mentioned, the appellant must demonstrate the applicability of the substantial right exception to the particular case before the appellate court. *See generally Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254 (stating that "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits") (citing *GLYK and Assocs. v. Winston-Salem Southbound Ry. Co.*, 55 N.C. App. 165, 170-71, 285 S.E.2d 277, 280 (1981)); N.C.R. App. P. 28(b)(4) (providing that an appellant must include in his or her brief "[a] statement of the grounds for appellate review[,]" including "citation of the statute or statutes permitting appellate review" and, in the case of an appeal from an interlocutory order, "sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right").

## C. Claims

According to clearly-established North Carolina law, a party's preference for having all related claims determined during the course of a single proceeding does not rise to the level of a substantial right. *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 7, 362 S.E.2d 812, 816 (1987). In *J & B Slurry Seal*, we discussed the Supreme Court's decision in *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), stating that:

> after *Green*, simply having all claims determined in one proceeding is not a substantial right. A party has instead the substantial right to avoid two separate trials of the same "issues": conversely, avoiding separate trials of different issues is not a substantial right. *See Porter v. Matthews Enterprises, Inc.*, 63 N.C. App. 140, 143, 303 S.E.2d 828, 830, *disc. review denied*, 309 N.C. 462, 307 S.E.2d 365 (1983) (stating *Green* held avoiding separate trials on separate issues is not [a] substantial right)[.]

*Id*. Issues are the "same" if the facts relevant to their resolution overlap in such a way as to create a risk that separate litigation of those issues might result in inconsistent verdicts. *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). As we explained in *Davidson*:

---

N.C. App. at 165, 545 S.E.2d at 262 (citing *Yang v. Three Springs, Inc.*, 142 N.C. App. 328, 542 S.E.2d 666 (2001)).

when common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."

*Id.* (quoting *Green*, 305 N.C. at 608, 290 S.E.2d at 596); *see also J & B Slurry Seal*, 88 N.C. App. at 9, 362 S.E.2d at 817 (explaining that "the presence of identical factual issues in both proceedings may produce inconsistent verdicts and thus an immediate appeal is [] allowed").

The mere fact that claims arise from a single event, transaction, or occurrence does not, without more, necessitate a conclusion that inconsistent verdicts may occur unless all of the affected claims are considered in a single proceeding. *Moose v. Nissan of Statesville, Inc.*, 115 N.C. App. 423, 428, 444 S.E.2d 694, 698 (1994). In *Moose*, a plaintiff sought compensatory and punitive damages based on a single automobile accident. *Id.* We held that, "despite being based on the same facts," "there [was] no possibility of inconsistent verdicts" if plaintiff's claims were determined in separate proceedings because "the issues before the jury [would be] separate." *Id.* at 428, 444 S.E.2d at 697-98. In support of this conclusion, we explained that:

Because the issues are separate, there is no possibility of inconsistent verdicts should plaintiff prevail on a later appeal. If the jury at the initial trial determines that defendant was negligent and plaintiff is therefore entitled to compensation, a retrial on the issue of punitive damages wherein defendant's negligence has already been established, may be won or lost without inconsistency in the verdicts. Should plaintiff lose at trial on the issues of negligence and proximate cause, he would not be eligible for recovery based on punitive damages, and a significant amount of time and effort expended at the appellate level will have been avoided. Again, there is no possibility of inconsistent verdicts.

*Id.* at 428, 444 S.E.2d at 698; *see also Nguyen v. Taylor*, —— N.C. App. ——, ——, 684 S.E.2d 470, 474-75 (2009) (stating that, "[w]hile plaintiffs are correct that all of these claims ultimately arise out of [the same incident], they are not correct in asserting that this creates a substantial right based upon the possibility of inconsistent verdicts and supports this Court's hearing of an interlocutory appeal[;]" that, "[a]lthough the facts involved in the claims remaining before the trial

court may overlap with the facts involved in the claims that have been dismissed, plaintiffs have failed to show that they will be prejudiced by the possibility of inconsistent verdicts in two separate proceedings[;]" and that, "[a]ccordingly, plaintiffs have failed to establish that a substantial right will be lost unless the trial court's order is immediately reviewed").

In light of the principle enunciated in *Moose* and *Nguyen*, we must look beyond the fact that Plaintiff's claims arose out of a single transaction in order to determine whether the trial court's order is immediately appealable. Instead, we must evaluate the specific proof required to litigate each claim in order to determine whether inconsistent verdicts might result in the event that we refrained from considering Plaintiff's appeal on the merits at this time.[6] After conducting the required analysis, we conclude that Plaintiff is not entitled to appeal the trial court's order on an interlocutory basis pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1).

On appeal, Plaintiff contends that her substantial right to have all of her claims against First American, each of which alleges the charging of unreasonable fees, determined in a single proceeding would be adversely affected were we to refuse to hear her appeal at this time. More specifically, Plaintiff argues that separately litigating her claims alleging that First American charged an unreasonable title binder fee, which survived Defendants' dismissal motions, and her claims challenging the reasonableness of the closing fee, the title search fee, the title clearing fee, the signing fee, and the courier fee, which were not equally successful in surviving Defendant's dismissal motions, might

---

6. The dismissed claims include: (1) claims that various fees represented payments to a non-lawyer for legal services rendered; (2) claims that various fees amounted to an unlawful division of fees relating to the provision of legal services between lawyers and non-lawyers; (3) claims that various fees violated N.C. Gen. Stat. § 58-33-85(b) given that Plaintiff did not consent to pay them in advance by means of a written document; (4) claims that the work leading to the assessment of certain fees was not properly performed; (5) claims that closing services insurance was issued in violation of N.C. Gen. Stat. § 58-26-1; and (6) claims that certain fees violated the prohibition set out in N.C. Gen. Stat. § 28-8(d) against the charging of unreasonable third party fees in connection with the provision of loan-related goods, products, or services. On the other hand, the claims still pending before the trial court include: (1) claims alleging that various fees violated the prohibition set out in N.C. Gen. Stat. § 28-8(d) against the charging of unreasonable third party fees charged in connection with the provision of loan-related goods, products, or services; (2) claims that various fees were not permitted by the rate schedule that First American had on file with the Department of Insurance; (3) claims that various fees exceeded the level permitted by the North Carolina Notary Public Act; and (4) claims that the services associated with various fees were not actually performed.

result in inconsistent verdicts. In each of these claims, Plaintiff has sought to have First American found liable based on a derivative liability theory. For that reason, the success of each claim depends upon a finding that First American "was either the principal of, a co-conspirator of, or a cooperating participant in MIS's unfair trade practices." As Plaintiff correctly points out, "there will be issues of fact for trial as to whether or not (and to what extent) MIS was [First American]'s agent in collecting the 'title binder,' whether or not MIS and [First American] agreed to collect the 'title binder' fee, and whether or not [First American] provided assistance to MIS in wrongfully collecting the 'title binder' fee" that will inevitably be considered during the litigation of Plaintiff's claim against First American stemming from the allegedly unreasonable title binder fee. In addition, as Plaintiff also correctly notes, her claims challenging the reasonableness of the closing fee, the title search fee, the title clearing fee, the signing fee, and the courier fee "all depend for their viability, as against [First American], on a finding . . . that MIS was [First American]'s agent in imposing those fees, that [First American] was a co-conspirator with MIS in imposing those fees, or that [First American] actively assisted and authorized MIS's charging of those fees." As a result, Plaintiff reasons that, in the event that one jury "render[ed] a verdict on the agency relationship, co-conspirator relationship, or aider/abettor relationship between MIS and [First American], as to the 'title binder' fee," and that a separate jury makes a different decision concerning "the issue of [First American]'s liability based on agency, conspiracy, or active aid and assistance" relating to the closing fee, title search fee, title clearing fee, signing fee, and courier fee, there is a sufficient risk of inconsistent verdicts to support allowance of an immediate appeal from the trial court's order. Plaintiff's logic is, however, fatally flawed.

As we understand Plaintiff's claims, First American's liability to Plaintiff must be assessed on a fee-specific basis. Even under Plaintiff's theory of the case, First American may have acted as MIS's principal, conspired with MIS, or otherwise assisted MIS with respect to one fee without having acted in the same manner with respect to another. For that reason, a finding that First American is liable to Plaintiff with respect to the title binder fee would not necessarily be inconsistent with a finding that First American is not liable as to one or more of the other fees. As a result, we do not find Plaintiff's "inconsistent verdict" argument relating to First American's liability for the charging of different allegedly unreasonable fees to be persuasive.

In addition, Plaintiff argues that its challenges to the reasonableness of the fees described in its complaint should not be considered separately because "the fees charged by MIS are alleged to be unreasonable in consideration of the totality of fees charged." We do not find this aspect of Plaintiff's argument persuasive either, since all of the "unreasonable fee" claims that Plaintiff has lodged against MIS survived Defendants' dismissal motions. As a result, the "aggregate reasonableness" of those fees will be determined by a single jury, with any subsequent claims against First American relating to these fees still requiring a fee-by-fee determination of the nature that we have outlined above. Simply put, Plaintiff has not demonstrated the existence of a substantial right to have the fee-based claims that she has asserted against First American litigated in the same proceeding in which MIS's liability for the charging of those fees is addressed. *Long v. Giles*, 123 N.C. App. 150, 152-53, 472 S.E.2d 374, 375-76 (1996) (holding that no substantial right is affected when a plaintiff's claims based on derivative liability are litigated separately from the claims that the plaintiff has asserted based on a direct liability theory because no possibility of inconsistent verdicts exists). Thus, Plaintiff has not established that there is a risk of inconsistent verdicts based upon her "cumulative unreasonableness" theory.

Next, Plaintiff appears to contend that separately litigating her claims alleging the charging of unreasonable fees and her claims alleging that the work performed in exchange for the payment of those fees was unlawfully performed by non-lawyers creates a risk of inconsistent verdicts. In support of this argument, Plaintiff points out that, in order to resolve both categories of claims, the jury must consider facts relating to the "scope of the work performed" in return for the payment of the challenged fees. There is, however, a clear difference in the manner in which these facts will be viewed during the jury's consideration of each class of claims. In evaluating the reasonableness of the challenged fees, "the scope of the work performed" is relevant for the purpose of examining the appropriateness of the amount charged in light of the nature and extent of the work performed and in comparing the fees charged by MIS with those typically charged for comparable services by other industry participants. On the other hand, in evaluating Plaintiff's claims that work was unlawfully performed by non-lawyers, the "scope of the work performed" is relevant for the purpose of ascertaining whether the work in question could only have been performed by licensed attorneys in light of the unauthorized practice statutes, the extent of the work actually per-

formed by licensed attorneys, and the amount that was paid for the performance of legal work by non-lawyers. The mere fact that the "scope of the work performed" is relevant to both classes of claims does not, standing alone, establish that separate consideration of these claims creates a risk of inconsistent verdicts given the differences in the nature of the inquiry that must be conducted as part of the evaluation of those claims.

As a result, we do not find the arguments advanced in Plaintiff's brief and response to Defendants' dismissal motions with respect to the appealability issue persuasive.[7] In addition, our independent examination of the facts relating to each of the relevant claims has not satisfied us that there is any danger of inconsistent verdicts stemming from the separate litigation of the dismissed[8] and remaining[9]

---

7. We are unable to agree with Plaintiff's argument that Defendants' "affirmative defenses may present fact issues that overlap claims dismissed by [the] interlocutory order and the claims that remain for trial, raising the possibility [of inconsistent verdicts]," since Plaintiff has failed to describe how separate consideration of Plaintiff's claims may result in such inconsistent verdicts in light of the affirmative defenses that Defendants have asserted. In addition, we are not persuaded by Plaintiff's contention that all claims arising under N.C. Gen. Stat. § 75-1.1 should be addressed in a single proceeding given that the extent to which a particular act does or does not constitute an unfair or deceptive practice is a question of law rather than fact. *See Lee v. Keck*, 68 N.C. App. 320, 330, 315 S.E.2d 323, 330 (stating that, "[i]n unfair trade practices cases, the jury need only find whether the defendant committed the acts alleged; it is then for the court to determine as a matter of law whether these acts constitute unfair or deceptive practices in or affecting commerce") (citing *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975)), *disc. review denied*, 311 N.C. 401, 319 S.E.2d 271 (1984); *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 691, 370 S.E.2d 267, 271 (1988) (stating that whether an act or practice violates N.C. Gen. Stat. § 75-1.1 is a question of law) (citing *Hoke v. Young*, 189 N.C. App. 569, 366 S.E.2d 548 (1988)); *Durling v. King*, 146 N.C. App. 483, 487-88, 554 S.E.2d 1, 4 (2001) (stating that "[t]he jury decides whether the defendant has committed the acts complained of" and that, "[i]f it finds the alleged acts have been proved, the trial court then determines as a matter of law whether those acts constitute unfair or deceptive practices in or affecting commerce") (citations omitted). In addition, we do not believe that a jury determination that a particular act was or was not in commerce with respect to one fee is necessarily conclusive on the "in commerce" issue with respect to a different fee or a different defendant. As a result, we do not believe that the fact that Plaintiff has asserted multiple claims under N.C. Gen. Stat. § 75-1.1 provides any justification for allowing her interlocutory appeal to proceed.

8. The facts relevant to the litigation of the dismissed claims include facts relating to what, if any, portion of the work associated with the challenged fees was performed by non-lawyers; what, if any, portion of the challenged fee was paid to non-lawyers; the extent to which Plaintiff did not consent to the assessment of the challenged fees in advance and in writing; and the quality of the services provided in exchange for the challenged fees.

9. The facts relevant to the litigation of the remaining claims include facts relating to the quantity of work performed; the amount charged; the relationship between

claims. As a result, Plaintiff's appeal from the trial court's decision to dismiss certain of her claims has been taken from an unappealable interlocutory order.

## D. Class Certification

Generally speaking, an interlocutory order denying a request for class certification is immediately appealable on the theory that it affects a substantial right. *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 10-11, 598 S.E.2d 570, 577-78 (2004) (citations omitted); *Perry v. Cullipher*, 69 N.C. App. 761, 762, 318 S.E.2d 354, 356 (1984). However, as we explained in *Stetser*, the "general rule[] [is] not dispositive," so that "each interlocutory order must be analyzed to determine whether a substantial right is jeopardized by delaying the appeal." *Stetser*, 165 N.C. App. at 10-11, 598 S.E.2d at 577-78. Plaintiff has not cited any case holding that an order partially, as opposed to completely, denying class certification affected a substantial right and was, for that reason, appealable on an interlocutory basis. Defendants, on the other hand, note that "[a]n examination of the cases allowing interlocutory review reveals that in each such case the trial court denied class certification completely."

Although Plaintiff argues that, "[i]f a denial of certification is immediately appealable because it eliminates all class members' claims, then a partial denial of class certification that eliminates some members' claims must likewise be appealable," we do not find this argument persuasive. In cases, such as this one, in which a request for class certification is partially granted, a class is defined and certain issues are designated for consideration on a class-wide basis. In light of the fact that an order, such as that at issue here, does involve a refusal to certify certain issues for consideration in the context of a class action, the class representative may, after final judgment, seek appellate review of that portion of the trial court's order refusing class certification on behalf of the proposed class. Based upon these considerations, we believe that an order partially denying class certification does not affect a substantial right to the same extent and in the same manner that an order refusing to certify any issue for consideration on a class-wide basis does. As a result, the trial court's decision to partially deny Plaintiff's motion for class cer-

---

the level of the challenged fees and similar fees charged by other industry participants; Plaintiff's eligibility for the reissue rate; the nature and extent of Plaintiff's communications with Defendants concerning her eligibility for that rate; the identity of the entity that assessed the signing fee; and the portion of the challenged fees attributable to the performance of notarial acts.

tification, like the trial court's order partially granting Defendants' motions to dismiss, is not appealable at this time.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that Plaintiff has, in this case, attempted to appeal from an unappealable interlocutory order. In light of that fact, we lack jurisdiction over Plaintiff's appeal and must dismiss it. Furthermore, we decline Plaintiff's invitation to treat its appeal as a petition for *certiorari* based on our determination that the general policy principles counseling against entertaining interlocutory appeals outweigh the "public interest" considerations upon which Plaintiff relies in urging us to grant *certiorari* in this case. As a result, Plaintiff's appeal should be, and hereby is, dismissed.

APPEAL DISMISSED.

Judges BRYANT and STEELMAN concur.