IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-497

Filed: 18 August 2020

Mecklenburg County, No. 17 CVS 15777

JANE DOE and JOHN DOE, Plaintiffs,

v.

CITY OF CHARLOTTE and G.M. SMITH, officially and individually, Defendants.

Appeal by plaintiffs from order entered 15 January 2019 by Judge Daniel A. Kuehnert in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 November 2019.

> *Tin, Fulton, Walker & Owen, PLLC, by S. Luke Largess, for plaintiffs-appellants.*

> *Parker Poe Adams & Bernstein LLP, by Daniel E. Peterson, for defendant-appellee City of Charlotte.*

> *Law Offices of Lori Keeton, by Lori R. Keeton, for defendant-appellee G.M. Smith.*

DIETZ, Judge.

Plaintiff Jane Doe got lost while driving her children to a birthday party. She stopped in a parking lot, hopped out of her car, and asked someone nearby for directions. Witnesses said Doe was gone from her car somewhere between one and two minutes.

During that time, Captain G.M. Smith, a law enforcement officer, arrived.

According to Doe's evidence, Captain Smith was inexplicably angry and hostile towards Doe for leaving her children in an unattended car. Captain Smith ignored other officers who said Doe had done nothing wrong and ultimately charged Doe with misdemeanor child abuse.

After the State dropped the charges and the police department reprimanded Captain Smith, Doe and her husband sued Smith and his employer, the City of Charlotte. The trial court dismissed a number of their claims based on public official immunity, finding that there was insufficient evidence that Captain Smith acted with malice.

A central issue in this appeal is our authority to hear it at all. As explained below, Plaintiffs made a series of avoidable mistakes that deprived this Court of jurisdiction to hear the case—their appeal was untimely; their Rule 54(b) certification was defective; their statement of the grounds for appellate review is inadequate; and instead of petitioning for a writ of certiorari, they requested that this Court "treat this appeal as writ for certiorari." Nevertheless, because this case raises important issues and Plaintiffs have a meritorious argument, we exercise our discretion to issue a writ of certiorari and address the merits of this appeal.

Reaching the merits, we reverse. Plaintiffs' evidence, viewed in their favor, is sufficient to create a genuine issue of material fact on the issue of malice. We acknowledge that Defendants have their own evidence indicating that Captain Smith

acted properly and without malice. But this Court cannot choose between that competing evidence—a jury must do that. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

**Facts and Procedural History**

The following recitation of facts represents Plaintiffs' version of events, viewed in the light most favorable to them. As the non-movants at the summary judgment stage, Plaintiffs are entitled to have disputed facts resolved in their favor during our appellate review. *See Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). We note that Defendants have their own evidence and witness testimony disputing many of these facts. Under the applicable standard of review, we must ignore Defendants' competing evidence at this stage in the case. *Id.*

Plaintiff Jane Doe[1] got lost while driving her young children to a birthday party inside a large nature preserve in Mecklenburg County. Realizing that she must have missed a turn, Doe pulled into a parking area, hopped out of her car, and asked a nearby park employee for directions. Two Charlotte-Mecklenburg Police Department officers, Aaron Deroba and David Gathings, were on patrol duty in the park and saw Doe drive up, exit her car, and walk toward a wooden fence to ask a park employee for directions.

---

[1] We assume that the names of Jane Doe and her husband John Doe are pseudonyms used without objection by Defendants. Jane Doe's real name is redacted in some portions of the record on appeal but appears unredacted in various other portions of the record.

Doe left her children unattended in her car while she asked for directions. According to a park employee who witnessed these events, it took about sixty seconds for Doe to walk to the fence, get directions, and jog back to her car.

As Doe returned to her car, another Charlotte-Mecklenburg Police Department officer, Captain G.M. Smith,[2] drove into the parking area in his patrol car and saw Doe's children unattended in her car. He then signaled for Officers Deroba and Gathings to come to him. According to Officer Gathings, no more than two minutes passed from the time they saw Doe leave her car to ask for directions and the time they responded to Captain Smith.

As Doe approached her car, Captain Smith ordered her to stop. Captain Smith was visibly angry and confronted Doe for leaving her children unattended in a car with the windows rolled up. Doe explained that she had only been gone for a moment and opened the driver's door to demonstrate that the car was still cool. Captain Smith briefly stuck his arm inside the car and responded, "No, it's not."

Captain Smith then informed Doe that he was charging her with child abuse. Both Officer Gathings and Officer Deroba told Captain Smith that they had observed Doe and that she had not left her children in the car for a dangerous amount of time. Captain Smith responded, "That doesn't matter." Captain Smith was "angry" and "aggressive" and he "bullied" the other officers on the scene throughout the encounter.

---

[2] The parties' briefing and the record on appeal use varying departmental ranks when referring to Smith. For consistency, we use Captain Smith.

According to an internal police department investigation, Officers Gathings and Deroba spoke outside Captain Smith's presence and agreed that there was no probable cause to arrest Doe. Doe also asked the officers "why Captain Smith was being so mean to her" and Officer Deroba responded that "he did not know why."

Ultimately, Captain Smith instructed Officer Gathings to issue Doe a citation for misdemeanor child abuse. Both Officer Deroba and Officer Gathings believed that Doe had not done anything wrong and told Captain Smith that they did not think there was probable cause to issue a citation. The officers later reported to departmental investigators that "Captain Smith overreacted and wasn't being objective or listening to what we observed." Officer Deroba told investigators, "It didn't seem like Captain Smith wanted to listen to anything I had to say." Because Officer Gathings felt bound to obey a superior officer, he issued Doe the citation for misdemeanor child abuse.

In December 2014, the State dismissed the criminal case against Doe. In 2015, following an investigation, Captain Smith received a written reprimand from the Charlotte-Mecklenburg Police Department for making an arrest that Smith knew, or should have known, was not in accordance with the law or department procedure.

In 2017, Jane Doe and her husband John Doe filed a complaint against Captain Smith in his individual and official capacities and against the City of Charlotte, his

employer, alleging claims for negligence, loss of consortium, false imprisonment, malicious prosecution, and claims under 42 U.S.C. § 1983.

Defendants later moved for summary judgment. On 15 January 2019, the trial court entered partial summary judgment, dismissing all claims in the complaint except the Section 1983 claim against Smith.

Plaintiffs then filed a "Motion to Reconsider," citing Rule 59 of the Rules of Civil Procedure. On 4 February 2019, the trial court denied the motion. Several weeks after the trial court denied Plaintiffs' motion to reconsider, Plaintiffs moved to certify the original summary judgment order for immediate appeal pursuant to Rule 54(b) of the Rules of Civil Procedure.

On 1 March 2019, the trial court entered a stand-alone order granting Plaintiffs' motion and stating that the trial court "hereby certifies that its Summary Judgment Order is a final judgment as to all claims against the City of Charlotte and as to the state law claims against Defendant Smith, and that there is no just reason for delay in entering that final judgment."

That same day, 1 March 2019, Plaintiffs appealed the trial court's 15 January 2019 summary judgment order, based on the newly entered Rule 54(b) certification. Plaintiffs' notice of appeal states that it is an appeal from "that Order granting partial Summary Judgment as to less than all claims and less than all parties in this action." The notice of appeal does not mention the 4 February 2019 denial of the motion to

reconsider.

## Analysis

## I. Appellate Jurisdiction

We begin our analysis by addressing Defendants' challenge to this Court's jurisdiction. As explained below, Plaintiffs made a series of avoidable mistakes that deprived this Court of jurisdiction to reach the merits of the appeal. Although this Court frequently excuses ordinary, non-jurisdictional rules violations by litigants, jurisdictional defects are different. This Court cannot excuse a jurisdictional mistake; that mistake "precludes the appellate court from acting in any manner other than to dismiss the appeal." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008). Because jurisdictional defects compel such severe consequences, we discuss the mistakes that occurred here for the benefit of the parties in this case and for future litigants.

### A. Improper use of Rule 59(e) motion to alter or amend a judgment

We begin with Defendants' argument that this appeal is untimely. "A timely notice of appeal is required to confer jurisdiction upon this Court." *Raymond v. Raymond*, 257 N.C. App. 700, 703, 811 S.E.2d 168, 170 (2018). Plaintiffs concede that they did not file their notice of appeal from the summary judgment order within thirty days of entry of that order, the time period that ordinarily applies to appeals from civil rulings. N.C. R. App. P. 3. But they argue that the time to appeal was tolled

because they filed what is often called a "post-trial" motion under Rule 59 of the Rules of Civil Procedure and, by doing so, tolled the time to appeal until the trial court ruled on that motion. *See* N.C. R. App. P. 3(c)(3).

Rule 59 cannot be used in this way; under settled precedent from this Court, Rule 59 is not an appropriate means of seeking reconsideration of interlocutory, pre-trial rulings of trial courts. *See, e.g., Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC,* 250 N.C. App. 791, 796, 794 S.E.2d 535, 538 (2016). We could end our analysis with this statement of settled law but, because Plaintiffs' mistake stems from continuing confusion among litigants about the effect of so-called "motions to reconsider," we will explain why Rule 59 is an inappropriate vehicle for seeking reconsideration of a pre-trial ruling by a trial court.

As an initial matter, this confusion likely results from there being no mention of a "motion to reconsider" in the North Carolina Rules of Civil Procedure. Thus, litigants seeking to have the trial court reconsider a ruling often search for wording in our procedural rules that permits their motion.

They might rely on Rule 7, which authorizes the use of "motions" as a means to apply "to the court for an order" on some subject, but does not enumerate, or expressly limit, the types of motions that may be made. N.C. R. Civ. P. 7(b).

Or they might rely on Rule 54(b), which states that "any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating

all the claims and the rights and liabilities of all the parties." N.C. R. Civ. P. 54(b). This implies that a litigant may ask the trial court to revise any decision in the case until the entry of a final judgment on all claims as to all parties.

But sometimes, litigants searching for the procedural mechanism for a "motion to reconsider" come across Rule 59(e), which it titled "Motion to alter or amend a judgment" and states that "a motion to alter or amend the judgment under section (a) of this rule shall be served not later than 10 days after entry of the judgment." N.C. R. Civ. P. 59(e).

This seems a relatively close fit—after all, most motions to reconsider are, in essence, asking the court to "alter or amend" some ruling by the court. And, importantly, Rule 59 offers a convenient, additional benefit. Ordinarily, when a litigant makes a motion to reconsider, the clock is still ticking on the 30-day deadline to appeal the underlying ruling. N.C. R. App. P. 3(c)(1), (2). But Rule 3 of the Rules of Appellate Procedure states that when a litigant makes a timely motion under Rule 59, "the thirty-day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion." N.C. R. App. P. 3(c)(3).

The problem with using Rule 59 to seek reconsideration of a pre-trial order is the wording of the rule itself. For ease of reference, we include the relevant portions of Rule 59 below:

Rule 59. New trials; amendment of judgments.

(a) Grounds.—A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:

> (1) Any irregularity by which any party was prevented from having a fair trial;
>
> (2) Misconduct of the jury or prevailing party;
>
> (3) Accident or surprise which ordinary prudence could not have guarded against;
>
> (4) Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at trial;
>
> (5) Manifest disregard by the jury of the instructions of the court;
>
> (6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
>
> (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;
>
> (8) Error in law occurring at the trial and objected to by the party making the motion; or
>
> (9) Any other reason heretofore recognized as grounds for a new trial.

On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

. . .

> (e) Motion to alter or amend a judgment.—A motion to alter or amend the judgment under section (a) of this rule shall be served not later than 10 days after entry of the judgment.

N.C. R. Civ. P. 59.

Everything about Rule 59(a), from its introduction governing "new trials," to the nine enumerated grounds, to the concluding text addressing "an action tried without a jury," indicates that this rule applies only after a trial on the merits. And Rule 59(e) expressly states that it applies only to issues for which Rule 59(a) would apply, but for which the moving party seeks to alter or amend the judgment, not to obtain a new trial.

Relying on the plain text of Rule 59, several decisions of this Court have held that Rule 59 does not apply to pre-trial rulings. *See Sfreddo v. Hicks*, __ N.C. App. __, __, 831 S.E.2d 353, 356 (2019); *Tetra Tech Tesoro*, 250 N.C. App. at 796, 794 S.E.2d at 538; *Bodie Island Beach Club Ass'n, Inc. v. Wray*, 215 N.C. App. 283, 294, 716 S.E.2d 67, 76 (2011).

This interpretation of Rule 59(e) is strengthened by contrasting it with the similarly worded provision in Rule 59(e) of the Federal Rules of Civil Procedure. As we have observed, Rule 59(e) of the Federal Rules of Civil Procedure is "broader than our State's counterpart: it permits a motion to 'alter or amend a judgment' generally, unlike the State rule, which limits its application to a 'motion to alter or amend the

judgment under section (a) of this rule.'" *Tetra Tech Tesoro*, 250 N.C. App. at 798, 794 S.E.2d at 539.

The North Carolina Rules of Civil Procedure "are modeled after the federal rules." *Sutton v. Duke*, 277 N.C. 94, 99, 176 S.E.2d 161, 164 (1970). For this reason, when our rules depart from the corresponding language of the federal rules, we must be particularly mindful of that differing language and the intent behind it. *Id.* Here, the drafters of our State's version of Rule 59(e) chose to limit the grounds for a motion to alter or amend a judgment to those listed in Rule 59(a), and we must give meaning to that deliberate choice of language.

Moreover, there are strong policy reasons for interpreting Rule 59 according to its plain text. As we previously have observed, the Rules of Civil Procedure "are enacted by our General Assembly, often following careful review by experts in the Bar. It undermines the purpose of the rules if the appellate courts expand their meaning beyond the written text, forcing litigants to research case law or consult treatises to fully understand the procedures that apply in civil actions." *Tetra Tech Tesoro*, 250 N.C. App. at 799, 794 S.E.2d at 539–40. A plain reading of the grounds listed in Rule 59(a) unambiguously demonstrates that those grounds apply only after trial.

Finally, we note that this interpretation does not leave litigants without a procedural vehicle to seek reconsideration of most pre-trial orders. Rule 54 draws a

distinction between final judgments and interlocutory rulings: "A judgment is either interlocutory or the final determination of the rights of the parties." N.C. R. Civ. P. 54(a). The Rule further provides that "in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C. R. Civ. P. 54(b). Thus, in a case like this one involving partial summary judgment, the party seeking reconsideration can move for that relief under Rule 54(b).

Accordingly, we hold that litigants cannot bring a motion under Rule 59(e) to seek reconsideration of a pre-trial ruling by the trial court. Rule 59(e) is available only on the grounds enumerated in Rule 59(a) and they apply only after a trial on the merits. As a result, even if a litigant cites Rule 59 in making a "motion to reconsider" a pre-trial order, that motion will not toll the time to appeal under Rule 3 of the Rules of Appellate Procedure. Applying this holding here, Plaintiffs' time to appeal was not tolled by their mistaken Rule 59 motion and the appeal of the underlying summary judgment order was not timely.[3]

## B.    The flawed "stand-alone" Rule 54(b) certification

Plaintiffs' mistaken reliance on Rule 59(e) is not the only jurisdictional error

---

[3] Plaintiffs could have timely appealed the denial of the motion to reconsider by simply including that order among those listed in the notice of appeal. But, for whatever reason, Plaintiffs chose to appeal only the underlying partial summary judgment order, further limiting the scope of this Court's review.

they made in this case. Plaintiffs also made a series of mistakes in their attempt to confer appellate jurisdiction over the admittedly interlocutory appeal.

In appeals from final judgments, the appealing party confers jurisdiction on this Court by timely filing a notice of appeal. *Dogwood Dev. & Mgmt. Co., LLC*, 362 N.C. at 197, 657 S.E.2d at 365. But the jurisdictional rules are different when litigants appeal from non-final, interlocutory orders because "[a]s a general rule, there is no right of appeal from an interlocutory order." *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 76, 772 S.E.2d 93, 95 (2015). "The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." *Id.*

As a result, interlocutory rulings are subject to a much stricter rule of appealability. In most cases, an interlocutory ruling is immediately appealable "in only two circumstances: (1) if the trial court has certified the case for appeal under Rule 54(b) of the Rules of Civil Procedure; and (2) when the challenged order affects a substantial right of the appellant that would be lost without immediate review." *Campbell v. Campbell*, 237 N.C. App. 1, 3, 764 S.E.2d 630, 632 (2014).

We begin with Plaintiffs' attempt to appeal based on a certification under Rule 54(b). Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim . . . the

court may enter a final judgment as to one or more but fewer than all of the claims . . . if there is no just reason for delay *and it is so determined in the judgment.*" N.C. R. Civ. P. 54(b) (emphasis added). An order that meets these criteria, and includes the necessary language, is then immediately appealable despite being non-final in nature. *Branch Banking & Trust Co. v. Peacock Farm, Inc.*, 241 N.C. App. 213, 217, 772 S.E.2d 495, 499, *aff'd per curiam*, 368 N.C. 478, 780 S.E.2d 553 (2015).

Importantly, in *Peacock Farm* this Court (and, through a one-word *per curiam* affirmance, our Supreme Court) rejected the notion that a trial court could go back and "certify" a previously entered order as immediately appealable under Rule 54(b). Because the plain text of Rule 54(b) includes the phrase "and it is so determined in the judgment," this Court reasoned that "Rule 54(b) cannot be used to create appellate jurisdiction based on certification language that is not contained in the body of the judgment itself from which appeal is being sought." *Id.* Thus, a "stand-alone" Rule 54(b) certification included in an order that "did not set out the substantive basis" for the underlying ruling is insufficient to permit an interlocutory appeal. *Id.*

Later cases applying *Peacock Farm* have observed that there is an easy work-around in this situation. As noted above, Rule 54 permits trial courts to change their interlocutory orders at any time before entry of final judgment. N.C. R. Civ. P. 54(b). So, in a case like this one involving partial summary judgment, the trial court simply could "amend the initial order" by entering a new order with the same substantive

language as the initial order but with the additional Rule 54(b) certification language added. *See, e.g., Martin v. Landfall Council of Ass'ns, Inc.*, 263 N.C. App. 410, 821 S.E.2d 894, 2018 WL 6613724, at \*4 (2018) (unpublished). Then, the aggrieved party can appeal that new order. *Id.*

Unfortunately, Plaintiffs did not follow this guidance from our precedent; instead, they did the one thing that our precedent repeatedly has held will subject the appeal to dismissal. Accordingly, the stand-alone Rule 54(b) certification in this case is ineffective and does not confer appellate jurisdiction over the challenged summary judgment order.

## C.    Inadequate explanation of the grounds for substantial rights

Plaintiffs also contend that the Rule 54(b) certification was unnecessary because the challenged order affects a substantial right. *See* N.C. Gen. Stat. §§ 7A-27, 1-277. To confer appellate jurisdiction based on a substantial right, "the appellant must include in its opening brief, in the statement of the grounds for appellate review, sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." *Denney v. Wardson Constr., Inc.*, 264 N.C. App. 15, 17, 824 S.E.2d 436, 438 (2019).

Here, Plaintiffs contend that there is a risk of "inconsistent verdicts" sufficient to satisfy the substantial rights doctrine. "The inconsistent verdicts doctrine is a subset of the substantial rights doctrine and one that is often misunderstood. In

general, there is no right to have all related claims decided in one proceeding." *Shearon Farms Townhome Owners Ass'n II, Inc. v. Shearon Farms Dev., LLC*, __ N.C. App. __, __, __ S.E.2d __, __ (2020). "Thus, the risk that a litigant may be forced to endure two trials, rather than one, does not by itself implicate a substantial right, even if those separate trials involve related issues or stem from the same underlying event." *Id.*

But things are different when there is a risk of "inconsistent verdicts," meaning "a risk that different fact-finders would reach *irreconcilable* results when examining the same factual issues a second time." *Denney*, 264 N.C. App. at 19, 824 S.E.2d at 439 (emphasis added). Importantly, "[t]he mere fact that claims arise from a single event, transaction, or occurrence does not, without more, necessitate a conclusion that inconsistent verdicts may occur." *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 80–81, 711 S.E.2d 185, 190–91 (2011). As a result, the appellant cannot meet its burden under the inconsistent verdicts doctrine simply by asserting that "the facts involved in the claims remaining before the trial court may overlap with the facts involved in the claims that have been dismissed." *Id.* Instead, the appellant must explain to the Court how, in a second trial on the challenged claims, a second fact-finder might reach a result that cannot be reconciled with the outcome of the first trial. *Denney*, 264 N.C. App. at 18, 824 S.E.2d at 439.

Plaintiffs did not do so here. They asserted, categorically and in a single sentence, that all the claims in this case involve the "same facts and legal questions" concerning probable cause, without explaining how or why a jury's consideration of those facts in the various state and federal claims in this case could lead to irreconcilable results. In effect, Plaintiffs asked this Court to comb through the record to understand the facts, research the elements of the various state and federal claims, and then come up with a legal theory that links these separate claims (all with distinct legal elements) to an underlying, determinative question of probable cause. That is not our role; we cannot "construct arguments for or find support for appellant's right to appeal from an interlocutory order." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). The burden is on the appellant to do so, and Plaintiffs did not carry that burden here.

A final observation: Plaintiffs' failure to adequately assert how the challenged order affects a substantial right may be partly explained by Plaintiffs' fixation on a published case that they believed to be controlling. This is a mistake our Court has warned against for years. Whether a particular ruling "affects a substantial right must be determined on a case-by-case basis." *Hamilton*, 212 N.C. App. at 78, 711 S.E.2d at 189. Consequently, outside of a few exceptions such as sovereign immunity, the appellant cannot rely on citation to precedent to show that an order affects a substantial right. Instead, the appellant "must explain, in the statement of the

grounds for appellate review, why the facts of that particular case demonstrate that the challenged order affects a substantial right." *Denney*, 264 N.C. App. at 18, 824 S.E.2d at 438. Accordingly, Plaintiffs' statement of the grounds for appellate review is insufficient to establish that the challenged order affects a substantial right.

## II. Issuance of a writ of certiorari

As the above analysis demonstrates, this Court lacks appellate jurisdiction to reach the merits of this case for multiple reasons: the appeal is untimely; the Rule 54(b) certification is ineffective; and the statement of grounds for appellate jurisdiction is inadequate. That means there is only one way for us to reach the merits of this case—we would need to issue a writ of certiorari in aid of our jurisdiction. *See* N.C. Gen. Stat. § 7A-32; N.C. R. App. P. 21.

Allowing a petition for a writ of certiorari would be simpler had Plaintiffs actually *filed* a petition for a writ of certiorari. But even in asking this Court to forgive their other mistakes that deprived us of jurisdiction, Plaintiffs made more mistakes. After Defendants moved to dismiss this appeal (putting Plaintiffs on notice of the jurisdictional issues), Plaintiffs did not petition for a writ of certiorari and acknowledge those potential jurisdictional defects. Instead, they opposed the motion to dismiss and filed a separate motion with the Court that asked, in a single sentence, for this Court to "treat this appeal as writ for certiorari if it finds that the appeal was untimely."

The Rules of Appellate Procedure provide a vehicle for requesting that this Court issue a writ of certiorari—that vehicle is a *petition* for a writ of certiorari. *See* N.C. R. App. P. 21. The petition has specific content requirements designed to ensure that the requesting party provides the Court with the facts and argument necessary to assess, in the Court's discretion, whether issuing the writ is appropriate.

To be sure, in the interests of justice this Court has—on rare occasions—construed some other appellate filing such as a brief or motion as a petition for a writ of certiorari and then allowed the petition. *Sood v. Sood*, 222 N.C. App. 807, 813, 732 S.E.2d 603, 608 (2012). But this is truly rare and something that this Court chooses to do on its own initiative; it is not something that a litigant should request. *Id.*; *see also Campbell*, 237 N.C. App. at 7, 764 S.E.2d at 634. Instead, a litigant who seeks issuance of a writ of certiorari should petition for one in the manner described in the Rules of Appellate Procedure. As our Supreme Court has observed, "procedure is essential to the application of principle in courts of justice, and it cannot be dispensed with." *Dogwood Dev. & Mgmt. Co., LLC*, 362 N.C. at 193, 657 S.E.2d at 362.

Having said all that, we will nevertheless exercise our discretion to issue a writ of certiorari in this case, ignoring Plaintiffs' failure to petition for one. We do so reluctantly and only because this case falls squarely into the category of exceptional cases suitable for certiorari review for two reasons. First, there are wide-reaching issues of justice and liberty at stake in this case. *State v. Hamrick*, 110 N.C. App. 60,

63, 428 S.E.2d 830, 832 (1993). Specifically, the lawsuit alleges serious misconduct and abuse of power by the government in violation of both the U.S. Constitution and our State's common law. Second, as explained below, Plaintiffs' issues on appeal are meritorious. *See State v. Rawlinson*, 262 N.C. App. 374, 820 S.E.2d 132, 2018 WL 5796276, at *1 (2018) (unpublished).

Given the seriousness of the issues in this case, and the merit in Plaintiffs' arguments, we are unwilling to dismiss this appeal for what is, essentially, a pattern of bad lawyering. But this opinion should serve as a warning to future litigants. As our Supreme Court has emphasized, "a jurisdictional default brings a purported appeal to an end before it ever begins." *Dogwood Dev. & Mgmt. Co., LLC*, 362 N.C. at 198, 657 S.E.2d at 365. Plaintiffs escaped that fate here, but future litigants may not be so lucky.

### III. Appeal of the trial court's partial summary judgment order

Having issued a writ of certiorari, we turn to the merits of Plaintiffs' appeal. The trial court entered summary judgment on a number of Plaintiffs' claims after determining that Captain Smith was entitled to public official immunity. That determination, in turn, was based on the trial court's determination that there was insufficient evidence to create a genuine issue of material fact on the question of malice.

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "When ruling on a motion for summary judgment, the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." *Atl. Coast Properties, Inc. v. Saunders*, 243 N.C. App. 211, 214, 777 S.E.2d 292, 295 (2015), *aff'd*, 368 N.C. 776, 783 S.E.2d 733 (2016). Summary judgment should be granted "with caution and only where the movant has established the nonexistence of any genuine issue of fact." *Id.* This Court reviews a grant of summary judgment *de novo. Id.*

The trial court's summary judgment rulings were based on the doctrine of public official immunity. That doctrine "is well established in North Carolina: As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 655, 543 S.E.2d 901, 904 (2001). Public official immunity "serves to protect officials from individual liability for mere negligence, but not for malicious or corrupt conduct, in the performance of their official duties." *Id.*

"A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends

to be prejudicial or injurious to another." *Id.* at 656, 543 S.E.2d at 905. The law presumes "that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Strickland v. Hedrick*, 194 N.C. App. 1, 10, 669 S.E.2d 61, 68 (2008). Accordingly, evidence to overcome this presumption and establish malice "must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." *Id.*

Applying this standard here, Plaintiffs presented sufficient evidence to create a genuine issue of material fact on the issue of malice. Their evidence (although admittedly disputed) shows that there was no probable cause for Captain Smith to charge Jane Doe with child abuse; that Captain Smith knew there was no probable cause to do so; that Captain Smith's decision to charge Doe was driven by anger and hostility toward her, not by evidence of a crime; and that this anger and hostility stemmed at least in part from racial or socioeconomic biases.

Importantly, Defendants do not assert that the evidence described above is insufficient to establish malice. Instead, Defendants make a series of claims that more closely resemble jury arguments than defenses of a summary judgment ruling. For example, Plaintiffs argue that they presented evidence that, during Captain Smith's encounter with Jane Doe, Smith became angry and hostile toward Doe, began yelling, and acted aggressively without any reasonable basis for doing so. Defendants

challenge this argument by repeatedly contending that "in reality" something else occurred, citing other, competing evidence. But this competing evidence only underscores that there is a genuine issue of fact here. Notably, Defendants do not argue that, as a matter of law, evidence that a law enforcement officer is inexplicably angry, hostile, or aggressive is not a factor that could support a finding of malice. They instead argue that their own facts rebutting Plaintiffs' claims are more persuasive. That argument is not one for this Court. *Lopp v. Anderson,* 251 N.C. App. 161, 174–76, 795 S.E.2d 770, 779–81 (2016). If there are competing facts on a potentially determinative issue, the jury must resolve those facts. *Id.*

Likewise, Plaintiffs argue that they presented evidence Captain Smith's actions stemmed at least in part from personal biases about Jane Doe's race or socioeconomic status. This evidence comes largely from Captain Smith's own statements during the internal police department investigation. Again, Defendants respond by asserting that those statements were "after the fact in the Internal Affairs' investigation" and are only relevant "in that context" because Captain Smith was explaining why he acted more aggressively because he believed his fellow officers were "intimidated" by Doe. But as with Defendants' previous arguments, this is not a summary judgment argument—it is a jury one. Defendants do not argue that, as a matter of law, evidence of an officer's bias or prejudice toward an accused cannot support a finding of malice. And as for whether Captain Smith's statements about

Doe's race or socioeconomic status were signs of malicious intent or instead were simply observations about other officers, this is, again, a fact question for the jury.

Finally, Plaintiffs presented evidence that Captain Smith ignored other officers who believed there was no probable cause to charge Doe with a crime. Defendants respond by asserting that Plaintiffs "cannot point to a single case where an officer is found to have acted with malice because he chose to act on his own investigation as opposed to relying on the word of other witnesses who did not have all relevant facts."

But again, this argument turns the summary judgment standard on its head by relying solely on the facts favorable to Defendants. *See id.* Plaintiffs' evidence is that two other officers were present and observing the scene before Captain Smith arrived—meaning those officers were the ones who had "all relevant facts." Plaintiffs' evidence further indicates that Captain Smith saw those officers as he arrived and waved them over, that those officers told Captain Smith that Jane Doe had not committed any crime, and that Captain Smith ignored those officers because of some personal anger and hostility toward Jane Doe.

In sum, Plaintiffs presented evidence at the summary judgment stage that (1) there was no probable cause for Captain Smith to arrest Jane Doe; (2) other officers whom Captain Smith knew had more information about the underlying events informed Captain Smith that Jane Doe had done nothing wrong; (3) Captain Smith

ignored the views of those other officers; (4) Captain Smith was angry, aggressive, and hostile toward Jane Doe; and (5) that Captain Smith's anger and hostility stemmed from racial or socioeconomic biases. That evidence is sufficient to create a genuine issue of material fact on the question of malice. Accordingly, the trial court erred by granting summary judgment on the ground that there was insufficient evidence of malice to overcome public official immunity.

The parties acknowledge on appeal that the lack of malice was the sole basis for entry of summary judgment on the individual-capacity claims against Captain Smith. Moreover, the parties acknowledge that the entry of summary judgment on the remaining claims challenged in this appeal stemmed from the dismissal of those individual-capacity claims. We therefore reverse the trial court's entry of summary judgment on all claims challenged in this appeal and remand for further proceedings.

## Conclusion

After issuing a writ of certiorari to review the merits of this defective appeal, we reverse the trial court's entry of summary judgment and remand for further proceedings.

REVERSED AND REMANDED.

Judges DILLON and ARROWOOD concur.