IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-982

Filed 15 April 2026

Wake County, No. 19CVS013093-910

SOUTHLAND NATIONAL INSURANCE CORPORATION in Rehabilitation, BANKERS LIFE INSURANCE COMPANY in Rehabilitation, COLORADO BANKERS LIFE INSURANCE COMPANY, in Rehabilitation, and SOUTHLAND NATIONAL REINSURANCE CORPORATION, in Rehabilitation, Plaintiffs,

v.

GREG E. LINDBERG, ACADEMY ASSOCIATION, INC., EDWARDS MILL ASSET MANAGEMENT, LLC, NEW ENGLAND CAPITAL, LLC, and PRIVATE BANKERS LIFE AND ANNUITY CO., LTD., Defendants.

Appeal by nonparty Robert Alban and nonparty Robert Gaddy from order entered 31 December 2024 by Judge A. Graham Shirley II in Wake County Superior Court. Heard in the Court of Appeals 25 March 2026.

> *Ragsdale Liggett PLLC, by Amie C. Sivon and William W. Pollock, for Appellant Robert Alban.*
>
> *Michael G. Newell, for Appellant Robert Gaddy.*
>
> *K&L Gates LLP, by Derek A. Sutton, Margaret R. Westbrook, John R. Gardner, and Gunjan D. Devnani, for appellee.*

FLOOD, Judge.

Nonparties Robert Alban and Robert ("Bo") Gaddy appeal from the trial court's interlocutory order directing them to appear and show cause as to why they should not be held in civil contempt. After careful review, we hold Alban and Gaddy failed to show demonstrate that the trial court's interlocutory order is immediately

appealable. We therefore dismiss both of their appeals on jurisdictional grounds.

## I. <u>Factual and Procedural Background</u>

This case has come before this Court numerous times before. *See Southland Nat'l Ins. Corp. v. Lindberg ("Southland I")*, 289 N.C. App. 378 (2023), *disc. review improv. allowed*, 388 N.C. 411 (2025); *Southland Nat'l Ins. Corp. v. Lindberg ("Southland II")*, 924 S.E.2d 577 (N.C. Ct. App. 2025); *Southland Nat'l Ins. Corp. v. Lindberg ("Southland III")*, 925 S.E.2d 312 (N.C. Ct. App. 2025). Since our previous opinions set forth the facts and procedural history of this case, we briefly recount the history of the case as it relates to this appeal.

Summarily, Southland National Insurance Corporation, Bankers Life Insurance Company, Colorado Bankers Life Insurance Company, and Southland National Reinsurance Corporation (collectively, "Plaintiffs") are insolvent insurers that were purchased and re-domesticated by Defendant Greg Lindberg in 2014. Prior to re-domesticating Plaintiffs, Lindberg "caused $1.2 billion that was held for Plaintiffs' policyholders to be invested into other non-insurance companies he also owned or controlled." *Southland I*, 289 N.C. App. at 381. Lindberg's large investments of Plaintiffs' money into his affiliated companies caused Plaintiffs to experience financial distress, so much so that, by 2018, the North Carolina Department of Insurance ("NCDOI") worried Plaintiffs would experience a shortfall on their obligation to pay claims by individual policyholders. Eventually, because of Lindberg's improper investments and Plaintiffs' financial distress, NCDOI placed

Plaintiffs under administrative supervision in 2018.

In June 2019, Lindberg and several of his affiliated companies, including Defendant Global Growth Holdings, Inc. f/k/a Academy Association, Inc., and Defendant New England Capital, LLC, entered into a series of agreements with Plaintiffs that established a framework for Defendants to repay Plaintiffs. One of the agreements into which the parties entered was a Memorandum of Understanding (the "MOU"), wherein Defendants agreed to transfer certain Lindberg-owned entities ("Specified Affiliated Companies" or the "SACs") to an independently owned holding company ("NHC") on or before 30 September 2019.

After failing to perform under the MOU, Plaintiffs sued Defendants for breach of the MOU and fraud[1] and sought a Temporary Restraining Order (the "TRO") against Defendants. The TRO, which was approved by the trial court, restrained Defendants and any third party acting in concert with them, from, *inter alia*, "[t]ransferring, withdrawing, concealing, defalcating, disposing of, or encumbering any Defendant[s'] assets" and "[a]cting, or causing any affiliated company to act, in a manner inconsistent with the best interests of Plaintiffs' policyholders." The TRO was never converted into an injunction; however, with the consent of the parties, the trial

---

[1] The trial court ultimately found Defendants had breached the MOU and had "fraudulently induced Plaintiffs to sign the MOU by making false representations and warranties"; Defendants appealed. *Southland I*, 289 N.C. App. at 385. This Court subsequently affirmed the trial court's finding that Defendants were liable for fraud, but we vacated and remanded the judgment as it pertained to Plaintiffs' remedies. *Id.* at 394.

court entered a Consent Extension of the TRO on 7 October 2019.

In April 2024, Plaintiffs filed a motion to modify the TRO and to appoint a receiver for Global Growth, alleging Defendants had violated the terms of the TRO. After a hearing, the trial court entered an order modifying the TRO (the "Modified TRO"), which stated the TRO's restrictions would continue to apply and imposed additional restrictions. The trial court also entered an order appointing Bill Janvier (the "Receiver") to serve as a limited receiver over Defendant Global Growth. The trial court further amended the Modified TRO on 12 July 2024 (the "Re-Modified TRO") after the Receiver reported various transactions in which Defendants violated the Modified TRO. Six days later, on 16 July 2024, the trial court appointed the Receiver to serve as a special master to "aid the [c]ourt with ensuring compliance with the [c]ourt's orders[.]"

Defendants appealed from the Re-Modified TRO.[2] While the appeal was pending, the Receiver, "as the duly appointed limited receiver[,]" filed a Motion for Order to Show Cause (the "Show Cause Motion") on 18 October 2024.

In his motion, the Receiver alleged that Defendants continued to make transfers that violated the Re-Modified TRO, and that Lindberg, nonparty Alban, and nonparty Gaddy, who serves as Global Growth's Chief Operating Officer, were

---

[2] Due to abandoning their argument that the trial court erred by modifying the TRO to extend beyond the MOU's specified scope, Defendants' appeal from the Re-Modified TRO was dismissed. *See Southland III*, 925 S.E.2d at 324.

attempting to transfer trust assets in violation of the TRO. Specifically, the Receiver alleged "Lindberg and Gaddy are currently attempting to replace the trustee over certain trusts, Steve Wilson, with a new trustee, Alban, and to transfer certain trust assets to a newly created trust." He based this allegation on the following documents: (1) a letter from Lindberg to Wilson dated 7 October 2024 wherein Lindberg accused Wilson of gross negligence and requested his "immediate resignation as Trustee of the Fleet Assist Trust"; (2) a letter dated 10 October 2024 from Gaddy to Wilson wherein Gaddy formally notified Wilson that, due to the serious allegations of gross negligence, "the entirety of the assets held in [t]rust are hereby transferred to ownership of the settlor of the [t]rust, Triton Financial Limited"; (3) a trust instrument dated 10 October 2024, wherein Gaddy and Alban "purport[ed] to establish a new trust entity, transfer 100% of the issued and outstanding membership units in the former Fleet Assist Group Trust, and dissolve the Fleet Assist Group Trust"; and (4) a Written Resolution of Triton Financial Limited, dated 11 October 2024, wherein Alban approved the transfers. For these reasons, the Receiver requested the trial court to enter an order directing Lindberg, Alban, and Gaddy to show cause.

The certificate of service for the Show Cause Motion states it was served on Alban and Gaddy. The notice of hearing, which was filed by the Receiver's counsel on 2 December 2024, set the show cause hearing for 13 December 2024; the certificate of service for the hearing notice states it was also served on Alban and Gaddy.

At 4:54 p.m. on 12 December 2024—the day before the hearing on the Receiver's Show Cause Motion—Alban, by and through counsel, filed an "Objection and Opposition" to the Receiver's Show Cause Motion, attaching an affidavit from Alban. In his objection, Alban asserted, *inter alia*, the trial court lacked personal jurisdiction over him, and he was not properly served. Gaddy did not file any objection to the Show Cause Motion.

As scheduled, this matter came on for hearing on 13 December 2024. Neither Gaddy nor any counsel purporting to represent him individually attended the hearing. Counsel for Alban moved to object to the trial court's jurisdiction over Alban, which the trial court overruled. The trial court then clarified, at the request of Alban's counsel, that the show cause order against Alban was going forward.

On 31 December 2024, the trial court entered an order (the "Show Cause Order"), finding there was probable cause for Lindberg, Alban, and Gaddy to be held in civil contempt and directing them to appear and show cause on 19 February 2025. Because Defendants' appeal regarding the Re-Modified TRO was still pending, *see Southland III*, 925 S.E.2d at 324, the trial court denied without prejudice the Receiver's Show Cause Motion with respect to payments made in excess of $5,000 by non-SACs. The 19 February 2025 show cause hearing, however, did not take place, and, as of the date of this opinion, has not been rescheduled.

Alban filed his Notice of Appeal on 25 March 2025; Gaddy filed his Notice of Appeal on 8 April 2025.

## II. <u>Jurisdiction</u>

"There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Veazey v. City of Durham*, 231 N.C. 357, 363 (1950). Thus, "[i]nterlocutory orders, or those orders entered in the course of litigation that do not resolve the case and leave open additional issues for resolution by the trial court, are ordinarily not subject to immediate appeal." *Crosmun v. Trs. of Fayetteville Tech. Cmty. Coll.*, 266 N.C. App. 424, 432 (2019). This general "rule forbidding interlocutory appeals is designed to promote judicial economy by eliminating the unnecessary delay and expense of repeated fragmentary appeals and by preserving the entire case for determination in a single appeal from a final judgment." *Love v. Moore*, 305 N.C. 575, 580 (1982).

"Notwithstanding this cardinal tenet of appellate practice," a party may appeal "interlocutory orders and judgments . . . in at least two instances." *Sharpe v. Worland*, 351 N.C. 159, 161 (1999). First, a party may "appeal from an interlocutory order when the trial court enters 'a final judgment as to one or more but fewer than all of the claims or parties' and the trial court certifies in the judgment that there is no just reason to delay the appeal." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379 (1994) (quoting N.C.G.S. § 1A-1, Rule 54(b)). And "[s]econd, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to

a final determination on the merits." *Id.* (citations and internal quotation marks omitted). Importantly, however, "the exceptions to the general rule of non-appealability" are narrowly construed. *Love*, 305 N.C. at 580.

"To confer appellate jurisdiction based on a substantial right, the appellant must include in its opening brief, in the statement of the grounds for appellate review, sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." *Doe v. City of Charlotte*, 273 N.C. App. 10, 21 (2020) (citations and internal quotation marks omitted). "The appellants must present more than a bare assertion that the order affects a substantial right; they must demonstrate *why* the order affects a substantial right." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 219 (2016) (citation omitted). "For certain issues, however, a demonstration of 'why the order affects a substantial right,' although encouraged, is not required to confer jurisdiction[.]" *Ayala v. Perry*, 298 N.C. App. 134, 139 (2025) (citations omitted). Importantly, "[i]f the appeal arguably implicates issues of . . . personal jurisdiction, or another well-recognized category of substantial right, the appellant must include in [his] brief a 'categorical assertion that the issue is immediately appealable'" and he "must also 'cite to precedent to show that an order affects a substantial right." *Id.* (citation modified). Where the appellant fails to carry this burden, "we are required to dismiss that party's appeal on jurisdictional grounds." *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 77 (2011).

Here, as Alban and Gaddy acknowledge, the Show Cause Order is an

interlocutory order because it "leaves further action to be taken." *See Blythe v. Blythe*, 163 N.C. App. 198, 200 (2004) (dismissing the plaintiff's appeal from a show cause order because it was interlocutory and did not affect a substantial right); *see also Wolfe v. Wolfe*, 67 N.C. App. 752, 754 (1984) (dismissing the plaintiff's appeal from a show cause order because show cause orders are made *ex parte*, and *ex parte* orders are interlocutory). The trial court did not certify the order pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure; thus, Alban and Gaddy, as appellants, have the burden of showing this Court why the trial court's order deprives them of a substantial right. *See Jeffreys*, 115 N.C. App. at 379. We now turn to consider their reasons as to why this Court should hear (1) Alban's appeal and (2) Gaddy's appeal.

### 1.  Alban's Appeal

In his opening brief, Alban asserts he may immediately appeal the interlocutory Show Cause Order because his appeal "is based upon objections to personal jurisdiction." To support his assertion, Alban relies on N.C.G.S. § 1-277(b), which provides, in relevant part, "[a]ny interested *party* has the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the *defendant*[.]" N.C.G.S. § 1-277(b) (2023) (emphasis added). As our Supreme Court explained several years ago, N.C.G.S. § 1-277(b) "applies to the [S]tate's authority to bring a *defendant* before its courts . . . [and] is concerned with the appealability of an adverse ruling on the court's power to require the *defendant* to defend the claim." *Love*, 305 N.C. at 580 (emphasis added). Moreover, the

- 9 -

application of N.C.G.S. § 1-277(b) "is limited to rulings on 'minimum contacts' questions." *Id.* at 581 (overruling three Court of Appeals cases that held N.C.G.S. § 1-277(b) applied to an adverse ruling on service and process).

Alban, however, is neither a party to this action, nor does he appeal from an adverse ruling regarding the trial court's personal jurisdiction over Defendants. And despite Alban's reiterations that he is not a party to this action, Alban does not cite any legal authority indicating that he—as a nonparty—has the right to appeal *any* order, *see Bailey v. State*, 353 N.C. 142, 156 (2000) ("A careful reading of Rule 3 [of the North Carolina Rules of Appellate Procedure] reveals that its various subsections afford no avenue of appeal to either entities or persons who are nonparties to a civil action."), let alone an interlocutory order.[3] A narrow construction of the exception under N.C.G.S. § 1-277(b) indicates that Alban's appeal is not the kind of interlocutory appeal that the statute permits. *See Love*, 305 N.C. at 580.[4]

Although he argues the Show Cause Order implicates issues of personal jurisdiction, Alban failed to cite precedent showing a show cause order issued upon a third party affects a substantial right. *See Ayala*, 298 N.C. App. at 139. Alban argues

---

[3] Under N.C.G.S. § 5A-24, a nonparty person who has been held in civil contempt may appeal the civil contempt order. *See* N.C.G.S. § 5A-24 (2023) ("A *person* found in civil contempt may appeal in the manner provided for appeals in civil actions." (emphasis added)). Alban, however, has not been held in civil contempt, nor has he cited any authority indicating a nonparty may appeal an interlocutory show cause order.

[4] To the extent Alban challenges sufficiency of process and service, our Supreme Court has made clear that such a challenge falls outside the scope of N.C.G.S. § 1-277(b). *See Love*, 305 N.C. at 581; *Land v. Whitley*, 388 N.C. 296, 303 (2025).

the Show Cause Order deprives him of a substantial right by hailing him into court as a nonparty; critically, however, the first and only time Alban raises this argument on appeal is in his reply brief. By omitting this argument from his "opening brief, in the statement of the grounds for appellate review," *Doe*, 273 N.C. App. at 21, Alban has failed to carry his burden of "present[ing] appropriate grounds for this Court's acceptance of an interlocutory appeal[,]" *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 79 (2015) (quoting *Jeffreys*, 115 N.C. App. at 379); *see also Ayala*, 298 N.C. App. at 139. Thus, due to Alban's appeal being outside the scope of N.C.G.S. § 1-277(b) and Alban's failure to carry his burden of presenting sufficient grounds in his opening brief to support immediate review, we must dismiss his appeal. *See Hamilton*, 212 N.C. App. at 77.

### *2. Gaddy's Appeal*

Gaddy argues that he can immediately appeal the interlocutory Show Cause Order because the order directs him to appear and show cause why he should not be held in civil contempt, which "*may* result in imprisonment." (Emphasis added.)

Indeed, this Court has held that "[t]he appeal of any contempt order[] [] affects a substantial right and is therefore immediately appealable." *Guerrier v. Guerrier*, 155 N.C. App. 154, 158 (2002) (citing *Willis v. Power Co.,* 291 N.C. 19, 30 (1976)). In *Willis*, our Supreme Court explained a civil contempt order affects a substantial right because

> [n]ot to entertain [the] appeal would force [the contemnor]

> either (1) to risk being punished by fine or imprisonment or (2) to comply with an order which it contends and which we believe to be erroneously entered. Should [the contemnor] comply with the purging conditions to avoid punishment, the important legal questions it seeks to raise on this appeal and tried to raise in the trial court would be rendered moot.

291 N.C. at 30.

A show cause order, however, is one way a judicial official may initiate civil contempt proceedings. *See* N.C.G.S. § 5A-23(a) (2023); *see also Moss v. Moss*, 222 N.C. App. 75, 77 (2012). And, once issued, a show cause order allows the alleged contemnor time to prepare his defense. *See Wolfe*, 67 N.C. App. at 753 (remarking that a "show cause hearing" provided "sufficient time and opportunity for the plaintiff to prepare her contempt defense"; thus "the plaintiff was not entitled to notice or an opportunity to be heard prior to the show cause hearing"). Thus, unlike a contempt order, a show cause order does not deprive an appellant of a substantial right by forcing him to choose between "being punished by fine or imprisonment" or "comply[ing] with an order" he contends is erroneous. *Cf. Willis,* 291 N.C. at 30.

Here, where the trial court initiated civil contempt proceedings against Gaddy, which may—or may not—result in holding Gaddy in civil contempt, Gaddy has failed to show how the Show Cause Order "will work an injury to him if not corrected before an appeal from the final judgment." *Veazey*, 231 N.C. at 362. In fact, Alban and Gaddy concede the 19 February 2025 show cause hearing—for reasons unknown to this Court—was never held and was not rescheduled. Interestingly, Alban and Gaddy

filed their notices of appeal in March and April 2025, respectively—after the date on which the show cause hearing was initially scheduled. Nonetheless, because Gaddy failed to carry his burden of showing the Show Cause Order affects a substantial right, his appeal must be dismissed. *See Hamilton*, 212 N.C. App. at 77.

In closing, we do not ignore the unnecessary delay in a final resolution for this case; the needless—yet, "effective"—delay in the administration of justice, *see Veazey*, 231 N.C. at 363; and "[t]he overwhelming burden and expense which interlocutory appeals like the one at bar cause this Court, this [S]tate, and the parties[,]" *see Moose v. Nissan of Statesville, Inc.*, 115 N.C. App. 423, 430 (1994). While the Receiver did not move for imposition of sanctions against Alban and Gaddy, nor do we impose any sanctions on our own initiative, we are compelled to remind parties and practitioners that, although this Court does not frequently impose sanctions pursuant to Rule 34, we may "impose a sanction against a party or attorney or both" should we "determine[] that an appeal or any proceeding in an appeal was frivolous because . . . the appeal was taken or continued for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]" N.C. R. App. P. 34(a)(2) (2025); *see Steadman v. Steadman*, 148 N.C. App. 713, 714-15 (2002) (imposing sanctions on the appellant and appellant's counsel because the premature appeal was taken for the improper purposes of causing unnecessary delay and increase in cost of litigation). It is imperative that the courts of this State be enabled to do their fundamental duty of "administer[ing] 'right and justice without sale,

denial, or delay.'" *Veazey*, 231 N.C. at 364.

### III. <u>Conclusion</u>

In sum, because nonparties Alban and Gaddy have failed to show why the trial court's interlocutory Show Cause Order is immediately appealable, we must dismiss both of their appeals.

DISMISSED.

Judges ZACHARY and STADING concur.